*Expidite pen DC/G Emergency Seal - Ex parte Motion*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**APRIL 19, 2019**

**HONORABLE RONNIE ABRAMS**

——————————————x

**19 - CV - 1455** (RA)

**CAROL NOE**
　　　　　**Plaintiff, v.**

**EX-PARTE MOTION**

**RAY REALTY**
**TRCU COFFEE**
**384 COURT**
**ZAVISA ZECEVIC**
**JOHN MILITEC**
**JULIA ZECEVIC**
**DEJAN ZECEVIC**
**THOMAS RICHARD CUMMINGS**
**MORTEN B TJELUM**
**JOHN DOE 4 to 8**
**JANE DOE 9 to 15**
　　　　　**Defendant.**

**EMERGENCY TRO INJUNCTIVE RELIEF**

**SEALING OF THIS EX-PARTE MOTION**
**KEEP APRIL 30TH EMERGENY CONFERENCE**
**& OTHER EMERGENCY RELIEF**



——————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 38
DATE FILED: 4-23-19

　　　　　Unrepresented Plaintiff, **CAROL NOE is an ADA Disabled Protected**

**Class Member of the Americans with Disabilities (ADA) under FHA (Fair**

**Housing Act) I am a Senior Citizen, on SSD, low income 29-year long term Rent**

**Stabilized Succession Rights Tenant since 2005 alleges as follows:**

**PRELIMINARY STATEMENT**

**D**eclaratory relief, Order granting emergency injunctive relief TRO to be dated 4/23/19 ,

Then at a later point a preliminary and  permanent injunctive relief to enjoin, remove,

remand and/or stay with monetary  damages, punitive damages, compensatory damages



3

under the Americans with Disability Act and the Fair Housing Act, as amended, 42 U.S.C.

§§ 36 01 et seq. (the "Act") and Civil Rights Violations under 42 USC 1983 under the

fourth, fifth and fourteenth amendments brought by unrepresented

permanently disabled plaintiff to redress housing discrimination on

the basis of disability Plaintiff seeks a jury award for no less than $15.5

million dollars against Defendant Owners named and Other Doe defendants

Plaintiff intends to share this jury award to advocate for other disabled

persons who are discriminated and retaliated against under FHA & ADA

with a full accounting provided to this honorable federal court

2. As alleged more fully below, RAY REALTY (Defendant) OWNERS & OWNERS

TRCU COFFEE & 384 COURT. THOMAS RICHARD CUMMINGS,

MORTEN B TJELUM, ZAVISA ZECEVIC, JULIA ZECEVIC, DEJAN ZECEVIC,

JOHN MILITIC and Other Defendant Owners and Defendants JOHN DOE 4 thru 8 &

JANE DOE 9 thru 15, is the owner and operator of a Rent Stabilized Building at 446

West 58th Street New York, NY containing 5 floors and 15 apartment units. Defendants

have continued to unlawfully discriminate and retaliate against Plaintiff based on her

disability by denying, ignoring and refusing her hundreds of written requests

under the ADA/FHA for reasonable accommodations in how mold, painting, floor

and other repairs are effectuated in accordance with my Doctors requirements

and in accordance with EPA and NYC Guidelines on Mold Remediation and Remediation

Expert Report Landlord has also discriminated and retaliated against disabled plaintiff by

failing to to sign and provide renewal leases for both 2018 and 2019 because defendant

owners refuse to allow for DRIE which is a freeze on rent provided to ADA disabled

4

tenants plaintiff and paid for by NYC a difference of approx. $20 per month. Owners deliberate and willful obstructive unlawful conduct by interfering, harassing, coercing, retaliating or intimidating plaintiff in her exercise and/or enjoyment of rights protected by the Act.

## FACTUAL ALLEGATION TRO EMERGENCY INJUNCTIVE RELIEF

3. **ORDER dated for today April 23, 2019 granting an EMERGENCY TRO for an immediate STAY with a 120-day extension pending preliminary injunction AGAINST the low city civil housing court action (They are Not s State Court) index 07780/18 from causing further irreparable harm pursuant to FED. R. Civ. P. 65(b) based upon information, belief, ongoing civil and criminal law enforcement investigations with new set of facts and irreparably harmful developments to ADA disabled protected class member and unrepresented plaintiff under FHA**

4. **ORDER DENYING ANY adjournment to defendants NOR to again disturb the Federal Court Conference date as already scheduled for Tuesday April 30, 2019 at 10:30AM since Date of emergency filing of Feb 15, 2019 almost three months to date in violation of Fed R Civ P. despite the Court insisting in Feb Order that an emergency conference would be held as soon as plaintiff Served defendants which they were properly and timely served and filed on Feb 26, 2019 & FEB 27, 2019 To the correct registered home address on file as RR owner registered with NYSDOS, HPD, DOB, NYCDOF, DHCR despite the false assertions in the letter the court received from defendants First set of lawyers Vincent Chirico Esq who pretended to be confused in order to STALL & BUY more TIME when ALL the lawyers in both cases were all upset that the (2) true identify of the new owners were Revealed by Chirico Esq in his papers filed with the court**

TRCU COFFEE & 384 COURT though they continue to CONCEAL behind the

prior owner OLD NAME of RAY REALTY and they are orchestrating in concert

with the Corrupted lawyers "Borah Goldstein" in the very low level city civil

housing court case to stall so that the pre-selected judge in housing can continue to

case fix claims such as REPAIRS

which are NOT listed in petitioner's papers in order to then all of a sudden ORDER

REPAIRS to OBSTRUCT/SEVER/DILUTE/DIMINISH plaintiff SUPERSEDED

STATUTORY FEDERAL CLAIMS OF, ADA & FHA & CIVIL RIGHTS

In order to render them MOOT, NULL & VOID despite the low level city civil

Housing court NOT once every adhering to ADA nor FHA in any of the (5) pervious

unlawful housing court cases brought in less than two years against 29-year RS long

Term ADA disabled protected class member

5.   ATTORNEY MATTHEW CUERTO ESQ REQUESTS FOR AJOURNMENT OF

APRIL 30, 2019 SHOULD BE DENIED as a RUSE to STALL so that the low civil

housing court case can continue its criminal case fixing schemes to obstruct and

deprive ADA Plaintiff and due process rights so REPAIRS are done at

record speed all of a sudden without Doctors explicit requirements and ADA &

FHA statutory enforcements, as they continue their ex-parte monitored

communication with the lower city civil housing court judiciary and all lawyers

6.  CUERTO ESQ who waits until the 18th of April to file with this court (but not with

plaintiff) his notice of appearance and answer of a sudden less then ONE day ago

notifies Pro se plaintiff by documented email and phone seeking a conference

adjournment to the

after ADA plaintiff has waited almost three months to be heard on these emergency

motions and claims as he stated for his vacation scheduled for April 25th which He claims

was planned many many months ago yet only upon filing of his papers does he raise it to

plaintiff without even serving plaintiff his answer in where plaintiff had to demand he

serve her which was improper service anyway and where plaintiff will reply to his answer

7.  The other Tactic/Reason being is that both Cuete Esq, Chirico Esq are orchestrating
    with Borah Goldstein (lower city civil housing court attorneys in crime) to continue
    their frauds upon this court, continued frauds/deprivations of rights upon the
    plaintiff and frauds upon the court by the court itself in the low level city housing
    court by shielding the TRUE IDENITY of the TWO TRUE OWNERS of the 58th
    Street property from liability and are coordinating their ongoing criminal
    deprivations ADA/FHA schemes who all remain under criminal law enforcement
    investigations and news media


8.  This is a civil action (please reference Feb 15, 2019 complaint/Motions/14 sets of
    letters with over 900 exhibits so you learn and understand the emergency
    facts/claims related to this matter as the docket entries are not being docketed
    properly)

## NEW FACTUAL ALLEGATIONS IN SUPPORT OF EMERGENCY TRO INJUNCTIVE RELEIF TO BE DATED 4/23/19

9.  Upon information, belief including but not limited to both civil and

    criminal ongoing investigations and news media scrutiny

    On or about March 21, 2019 thru April 22, 2019 to date Plaintiff

    Learned that the lower housing civil court (which again is Not a State Court)

intends to Issue a series of unlawful orders without motions before that court and

without due process On Tuesday April 23, 2019 against Plaintiff with again No

No Motion before the court and again with No due process afforded plaintiff.

The order will include but is not limited to immediate REPAIRS to all of

A sudden be done in record speed in plaintiff apartment despite the fact that

the petitioner sought NO claim in his moving papers to make any repairs

NOR address any violations NOR address any ADA nor FHA in over two

Years plus in all other (4) previous cases even defying a court order that plaintiff

Brought against Owner

The goal of the present judge 2019 who was also one of my prior judges in 2017

Case as she was pre-selected by a higher ranking judge with both have a personal vested

Interest In the outcome (federal rule 60b (4) and more

The housing Case was taken away from the random computer selected judge all of a

sudden in order to facilate the criminal schemes which was established by the same

set of players in all (5) unlawful cases in less than two years their goal is to

EXTINGUISH/SEVER my right to exercise my federal civil rights Claims, ADA & FHA

With the same set of high powered lawyers for the landlords Borah Goldstein (Ongoing
criminal law enforcement investigations continue into their relationship with over 21 plus
city civil housing court judiciary play for pay with Borah Goldstein )

   10. Since NO repairs were made in all (4) past housing court cases unlawfully

brought against me in less than (2) years the ONLY reason they want repairs ALL of a

SUDDEN despite NO claims NOR REPAIR MOTIONS before the lower court

Is to further extinguish ALL my CIVIL & CONSTITUTIONAL

RIGHTS to ENFORCE ADA & FHA in HOW ALL

The REPAIRS must be effectuated in accordance with my Doctors written

8

Requests and Industry Standard Regulations & Guidelines in the protections

of ADA tenants under FHA done ONLY thru the FEDERAL CLAIMS in this Court

. Since ALL 500 plus written documented DR and my medical requests made to the

landlord And throughout the past (4) cases were deliberate and willfully

ignored

11.  Borah Goldstein and the Low City Civil Housing court Judiciary same 21 plus

Are the subject of ongoing criminal and civil law enforcement investigation

news media exposure as pro se ADA plaintiff is in the process as a

watchdog/whistleblower with the news media to release NYC Housing Corruption

Reports

12.  As a result of #11 the court and the BG attorneys thru ex-parte continued

communications retaliated and discriminated  against me on the record

again my right to free speech in my motion papers in the lower city civil housing C

The court again on 3/21/19 attempted to unlawfully refer me to APS with NO

LEGAL grounds as I DO NOT qualify for an APS referral as their again was NO

motion before the court and NO due process in order to EXACT a PUNITIVE

MEASURE against me to SILENCE me into Not cooperating with any criminal

investigations nor media which was the same scheme that was used against me in

2017 brought against me in housing court in 2017 to deem me all of a sudden

mentally incompetent in their hopes that law enforcement and  national news media

will see me in a negative light despite my credentialed professional prior work

history. The APS caseworker in 2017 testified on record that I had been targeted

by the judiciary in an effort for the corrupted housing court judiciary to enable the

corrupted lawyers and his landlord to win the case the APS case worker refused to

interview me and deemed me UNQUALIFIED for APS they have tried it again in

March 2019 and APS has stated they will Not join them in their schemes


### INJUNTIVE RELIEF/STAY-/STANDARD-TRO EMERGENCY RELIEF

13. To satisfy the injunction standard, the moving party must demonstrate the classic

   four elements: (1) a reasonable probability of success on the merits; (2) that

   denial of injunctive relief will result in irreparable harm; (3) that granting

   injunctive relief will not result in even greater harm to the non-moving party;

   and (4) that granting injunctive relief will be in the public interest. Saudi Basic

   Industry Corp. v. Exxon Corp., 364 F.3d 106, citing Allegheny Energy, Inc. v. DQE,

   Inc., 171 F.3d 153, 158


   Accordingly, where, as here, all four elements of injunctive relief are established
   by the moving party, injunctive relief is appropriate.

14. Because Plaintiff Have Established All Four Elements for the Grant of Injunctive

   Relief, a Temporary Restraining Order is Appropriate to extend to 120 DAYS plus

15. As to the first required element — likelihood of success on the merits of movant's

   claims, it is well settled that movant must establish a reasonable probability of

   success on the merits, and not a certainty of success. Oburn v. Shapp, 521 F.2d.

   In the instant case, Respondents' legally protected property rights are clear and

   unambiguous. It is also clearly evident that Defendants' conduct set forth in

   Plaintiffs' Feb 15, 2019 Complaint, exhibits, letters, motions and in this present

   EX- PARTE Motion is unlawful and violates

   Plaintiff's ' legally ADA, FHA, Civil & Constitutional guaranteed rights and her 1st,

4th and 14th protected property rights. Accordingly, Plaintiff's Ex-PARTE Motion clearly establish a reasonable likelihood of success on the merits of her' claims.

### DENIAL OF HER CLAIM WILL RESULT IN IRREPRABLE HARM TO HER ADA, FHA, CIVIL & CONSTITUTIONAL RIGHTS IN HER CLAIM & CAUSE EVICTION WITHOUT DELAY TO HER 29 YR RENT STABLIZED APARTMENT

16. With respect to the second element — the denial of injunctive relief will result in irreparable harm to Respondent. It has been held that "in order to demonstrate irreparable harm, movant must demonstrate potential harm which cannot be addressed by a legal or equitable remedy following a trial." Instant Air Freight Co. v. C.F. Airfreight, Inc., 882 F.2d. It is well settled that a deprivation of a person's legally protected ADA, FHA, civil and constitutional along with property right will result in irreparable harm. In the instant case, Defendants wrongful conduct has severally invaded Plaintiff' legally protected property rights. Moreover, the harm resulting from Defendants discriminatory and retaliatory ADA/FHA wrongful conduct is continuing

Accordingly, Plaintiff motion shows that a denial of injunctive relief will result in immediate and continuing irreparable harm to Plaintiff

17. The third and fourth elements necessary for injunctive relief — that the granting of injunctive relief will Not result in even greater harm to the nonmoving party, and that the grant of injunctive relief is in the public interest — are also clearly established in Plaintiff's Complaint, Exhibits, Motions, Letters and this EXPARTE MOTION  NO harm will result to defendants should injunctive relief be granted. Conversely, immediate and irreparable harm will result to ADA Disabled Protected Class Member should injunctive relief be denied. Accordingly,

Respondents has clearly satisfied the third element.  The same is also true with respect to the fourth element in that it is clearly within the public interest that the legally protected  rights of Petitioners be protected and enforced by FEDERAL COURT SUPERSEDED JURISDICTION

18. Applying these principles to the case at bar, it is clear these are all a part of the same "factual grouping".

19. In support thereof, Respondent will bring to the Court's attention and ask the Court to take judicial notice of the numerous civil and criminal investigations by new organizations to be published which remain relevant to this case.

## CONTROLLING AUTHORITY – CASE LAW- TRO & PRELIM/PERMANENT GRANTED IN the FOLLOWING IMPT ADA –FHA & CIVIL RIGHTS CASES

**DOCKET 12-CV-1733(ADS)(AKT)**
Sinisgallo v. Town of Islip Hous. Auth

**DOCKET**
United States v. 111 E. 88TH Partners

**RAGBIR civil rights free speech**
Lesmon civil rights free speech

## FIRST CLAIM FOR RELIEF FOR EMERGENCY TRO BASED ON NEW FACTS

## SECOND CLAIM FOR RELIEF PLAINTIFF OBJECTS TO AJOURNMENT APRIL 30TH CONFERENCE

Disabled   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 20 of this EX-PARTE MOTION fully set forth in this paragraph.  Emergency TRO INJUNCTIVE RELIEF BE GRANTED IMMEDIATLEY APRIL 23, 2019 & THAT

NO AJOURNMENT BE MADE TO EMERGENCY APRIL 30, 2019 CONFERENCE

under 42 U.S.C 1983 due process federal claims under 4th, 5th and 14th amendments in

conjunction with 5.1.B.1. of 42 USC 1983 and statutory ADA reasonable accommodations

under FHA


**EXHIBIT A –CHRICO LETTER IDENTIFYING TRCU COFFEE & 384 COURT**

**EXHIBIT B – EMAIL form CUETO APRIL 22, 2019 asking for adjournment despite
having according to his own words planned this trip for several months he states he Does
have OTHER partners and lawyers that are able to highlight conference**

**EXHIBIT C- PROTECTED HIPAA MEDICAL DO NOT PLACE ON DOCKETAS PER
ABRAMS ORDERS OF FEB 21, 2019 THANK YOU**

**EXHIBIT D  - CONTROLLING CASE LAW USA V 111 East 88th street**


**42 U.S.C. § 1983 : The Public Health And Welfare — Civil Rights — Generally  Civil
Action For Deprivation Of Rights--5 Jan 2017**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress, except that in any action brought against a judicial officer for an
act or omission taken in such officer's judicial capacity, injunctive relief shall not be
granted unless a declaratory decree was violated or declaratory relief was unavailable. For
the purposes of this section, any Act of Congress applicable exclusively to the District of
Columbia shall be considered to be a statute of the District of Columbia.

(R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III,
§ 309(c), Oct. 19, 1996, 110 Stat. 3853.)


### 5.1.B. Due Process Claims and Procedural Issues and Section 1983

In relevant part, the Fourteenth Amendment prohibits any state from depriving "any
person of life, liberty, or property, without due process of law." Claims under this
provision have been a staple of Section 1983 legal services practice for many years.
Procedural due process addresses the right to notice and hearing before (or after)
particular deprivations can take place. Substantive due process concerns governmental
deprivations of life, liberty, or property stemming from particularly outrageous
governmental actions. The Supreme Court has developed a number of guidelines on the use

of Section 1983 to raise claims founded on alleged deprivations of due process, beginning with an analysis of interests protected by due process.

<u>Ashcroft v. Iqbal</u>

**Court Name: U.S. Supreme Court**
**Date: 18 May, 2009**
**Cited By: 118938**

...of the equal protection component of the Due Process Clause of the Fifth Amendment, see Davis v. Passman, 442 U.S. 228... With exceptions inapplicable here, Congress has vested the courts of appeals with "jurisdiction of appeals from all final decisions of the district courts of the United States...cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to...

## State actor

The prohibitions, generally, of the due process clauses apply only to the actions of <u>state actors</u>, and not against private citizens. However, where a private person is acting jointly with state officials in a prohibited action, they are said to be acting under the "color of the law" for the purposes of 42 U.S.C. § 1983.[20] While private actors are not generally held to the actions of private citizens, it remains that private citizens may be held criminally liable for a federal felony or misdemeanor, if they conspire with the government to commit actions which violate the due process clauses of the constitution.[21][22]

## Procedural due process

Procedural due process requires government officials to follow fair procedures before depriving a person of <u>life</u>, <u>liberty</u>, or <u>property</u>.[23]:657 When the government seeks to deprive a person of one of those interests, procedural due process requires the government to afford the person, at minimum, notice, an opportunity to be heard, and a decision made by a neutral decision maker.

This protection extends to all government proceedings that can result in an individual's deprivation, whether civil or criminal in nature, from parole violation hearings to administrative hearings regarding government benefits and entitlements to full-blown criminal trials. The article "Some Kind of Hearing" written by Judge <u>Henry Friendly</u> created a list of basic due process rights "that remains highly influential, as to both content and relative priority".[24] These rights, which apply equally to civil due process and criminal due process, are:[24]

1. An unbiased tribunal.

2. Notice of the proposed action and the grounds asserted for it.

3. Opportunity to present reasons why the proposed action should not be taken.

4. The right to present evidence, including the right to call witnesses.

5. The right to know opposing evidence.

6.  The right to cross-examine adverse witnesses.

7.  A decision based exclusively on the evidence presented.

8.  Opportunity to be represented by counsel.

9.  Requirement that the tribunal prepares a record of the evidence presented.

10. Requirement that the tribunal prepares written findings of fact and reasons for its decision.

WHEREFORE, Plaintiff requests that the Court enter granting the following emergency relief

1.) Issuing an Order for a TRO & eventually to a Preliminary Injunction to Permanent Injunction to Enjoin/Remove/Remand/stay as the civil housing new lower court case will reach its judgment before the federal case has been adjudicated in evicting disabled protected class member

2.) Allow the April 30, 2019 Conference to proceed as scheduled with NO further delays

3) Issuing a final Order for a Permanent Injunction – To Enjoin – Remand – Stay – Remove to the jurisdiction of this Honorable Federal Court

4) Appoint Pro Bono Council for this Federal Emergency Complaint from a qualified law firm but Not from any legal service non –profit provider

5) Granting such further relief as this Court may deem just and proper.

Dated New York, New York

April 22, 2019

Respectfully Submitted

ADA Disabled Protected Class Member

Mailing Address
PO BOX 201913
917-237-0202
Conscience@nyc.rr.com
Conceal please the above identifying information from the computer pacer DOCKET record

15

**APRIL 22, 2019**

**DECLARATION TO EXPEDITE EMERGENCY TRO AND OR EMERGENCY PRELIMINARY INJUNCTIVE RELIEF**

**I, Carol Noe and unrepresented plaintiff ADA disabled protected class member under the ADA And FHA declare that the above Information contained in this emergency ex-parte TRO and other relief sought, exhibits etc, at the time of this writing is truthful to best of my knowledge, information recollection available at this time**

**I also wish to state that I reserve the right to amend, supplement, correct, clarify any and all pleadings and documents in support as they become more readily available to me**

**I would also respectfully request that this court allow me the opportunity to right to amend and supplement as required by law and to first provide any and all information and documents Available to the court at the courts request in order for the court io grant any and all Relief or other relief that this honorable federal court deem just and proper**

**SIGNED**



United States v. 111 E. 88TH Partners

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV UNITED STATES MAGISTRATE JUDGE

ACTS

<u>The Public Health And Welfare — Fair Housing — Generally — Declaration Of Policy</u>

<u>The Public Health And Welfare — Fair Housing — Generally — Enforcement By Secretary</u>

<u>The Public Health And Welfare — Fair Housing — Generally — Administrative Enforcement; Preliminary Matters</u>

<u>The Public Health And Welfare — Fair Housing — Generally — Enforcement By Private Persons</u>

The United States of America (the "Government") has brought this action under the Fair Housing Act (the "FHA"), <u>42 U.S.C. § 3601 et seq.</u>, against 111 East 88th Partners, the owner and operator of a condominium building in Manhattan. The Government alleges that the defendant discriminated against its tenant Gregory Reich based on his disability by refusing his request to keep an emotional support dog in his apartment. After this action was filed, Mr. Reich's dog died. The Government now seeks to amend its complaint to add factual allegations about a subsequent denial of reasonable accommodation. The motion is granted.

Background

The original complaint alleges that Mr. Reich leases a rent-controlled apartment in the defendant's sixty-one unit building. (Complaint, ¶¶ 7-8, 17). Mr. Reich suffers from a number of conditions, including depression, a personality disorder, and chronic kidney disease. (Complaint, ¶ 15). In 1997, he adopted a dog, Orion, apparently in violation of his lease, which prohibits tenants from keeping dogs without the defendant's written permission. (Complaint, ¶¶ 16, 18). In 1998, the defendant commenced an eviction action, which was dismissed because the landlord failed to take action within three months of learning of the pet's presence. (Complaint, ¶ 18).

Orion died in 2006, and Mr. Reich soon adopted another dog, Maddy, from an animal shelter. (Complaint, ¶ 19). In response to the defendant's notice of termination of his tenancy, Mr. Reich asked that he be able to keep the animal as a reasonable accommodation, after which the defendant commenced an eviction action. (Complaint, ¶ 21). Mr. Reich filed a complaint with the Department of Housing and Urban Development ("HUD"), and ultimately the New York State Department of Human Rights filed a discrimination action on his behalf in state court. (Complaint, ¶ 22). In September 2015,

the state court ruled that, because Mr. Reich's therapist had found that as of March 2014, he no longer met the criteria for his previous diagnoses, Mr. Reich could not present evidence of psychological impairment. (Complaint, ¶ 23). The action was later dismissed. (Complaint, ¶ 23).

The original complaint asserts that the action was dismissed without prejudice. (Complaint, ¶ 23). The proposed Amended Complaint states that the state court later clarified that the dismissal was with prejudice. ([Proposed] Amended Complaint ("Proposed Complaint"), attached as App. A to Plaintiff's Memorandum of Law in Support of Its Motion to Amend the Complaint ("Pl. Memo."), ¶ 23).

In March 2015, Mr. Reich was diagnosed with End-Stage Renal Disease, leading to deterioration of his mental health. (Complaint, ¶¶ 15, 27-28). In June 2015, Mr. Reich asked for an accommodation to keep an emotional support dog in his apartment. (Complaint, ¶ 26). The defendant thereafter requested that Mr. Reich provide copies of his therapist's session notes as well as medical records and history. (Complaint, ¶ 29). Mr. Reich filed a complaint with HUD, reasoning that the defendant's requests for medical information were so burdensome as to constitute a denial of his request. (Complaint, ¶ 31). HUD investigated the complaint and issued a Charge of Discrimination against the defendant. (Complaint, ¶ 13). In October 2016, the Government filed this action pursuant to 42 U.S.C. § 3612(o)(1). (Complaint, ¶ 14).

The proposed Amended Complaint alleges the following facts. Maddy died in April 2017. (Proposed Complaint, ¶ 33). Approximately one and one-half months later, Mr. Reich asked to be allowed to adopt another dog for emotional support. (Proposed Complaint, ¶ 34). The defendant then sought

(1) copies of Mr. Reich's "medical records and medical history, including but not limited to medical management provided, tests conducted with their results, glomerular filtration rate, MRI, CT scan, ultrasound or contrast x-ray, for the period of time Dara Huang MD, Shuchita Sharma, MD, and Kidney & Hypertension Specialists of New York, P.C. have been seeing/treating [him],"
(2) copies of "medical records relating to the claimed ongoing and continuing medical problems regarding his ability to receive dialysis," and
(3) the "exact breed of the dog" that Mr. Reich wished to adopt.

(Proposed Complaint, ¶ 35). The defendant also reserved its right to "supplement" its requests in various ways. (Proposed Complaint, ¶ 35). The Government seeks to amend its complaint to add these allegations, asserting that the defendant's responses to the 2017 accommodation request, like its responses to the 2015 accommodation request, were intended to discourage Mr. Reich from pursuing his rights under the FHA and reflect an intent to discriminate against him based on his disability. (Proposed Complaint, ¶ 39).

These requests are very similar to the requests that the defendant made in connection with Mr. Reich's 2015 request for accommodation. (Determination of Reasonable Cause and No

Reasonable Cause ("HUD Determination"), attached as part of Exh. A to Declaration of Sharanya Mohan dated Aug. 31, 2017, at 5).

Discussion

A. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure provides that courts should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); accord Foman v. Davis, 371 U.S. 178, 182 (1962); Aetna Casualty & Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 603 (2d Cir. 2005). "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)). The district court has broad discretion over motions to amend, see McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007), and may deny such a motion for any of the following reasons: (1) undue prejudice to the non-moving party, (2) futility, (3) bad faith or dilatory motive, (4) repeated failure to cure deficiencies by previous amendments, or (5) undue delay, United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016).

B. Futility

Leave to amend should be denied as futile when the amended pleading would not survive a motion to dismiss under Rule 12(b). IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Group, PLC, 783 F.3d 383, 389 (2d Cir. 2015). Thus, the standard governing leave to amend is whether the amended pleading states a claim on which relief can be granted when all facts pled are accepted as true and construed in the light most favorable to the plaintiff. See Panther Partners Inc. v. Ikanos Communications, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-80 (2009)). The non-moving party bears the burden of demonstrating that the proposed amendment is futile. See Allison v. Clos-ette Too, LLC, No. 14 Civ. 1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

The defendant argues that the Government "seeks to circumvent the administrative framework . . . of the [FHA], which mandates . . . that enforcement actions initiated by . . . [HUD] proceed pursuant to a prescribed administrative process." (Defendant Memorandum of Law in Opposition to the Government's Motion to Amend the Complaint ("Def. Memo.") at 1). The FHA establishes certain procedures to follow upon the filing of an administrative complaint with HUD alleging a discriminatory housing practice. These include notice to the respondent, an investigation of the claim, a conciliation process, and a determination of whether reasonable cause exists to believe that a discriminatory housing practice has occurred. 42 U.S.C. § 3610(a)-(b), (g). Because the Government did not engage in a new round of investigation, conciliation, and determination in connection with Mr. Reich's most recent complaint, the defendant asserts it lacks "standing to maintain this action." (Def. Memo. at 9). But "it is well-settled that a plaintiff is not required to exhaust administrative remedies before commencing an FHA . . . claim in federal court." Sinisgallo

v. Town of Islip Housing Authority, 865 F. Supp. 2d 307, 320-21 (E.D.N.Y. 2012) (collecting cases); see also 42 U.S.C. § 3613 (a)(2) (allowing aggrieved persons to commence civil actions without filing administrative complaints); Hart v. Murphy, No. 8:12-CIV-2020, 2013 WL 1278161, at *1 (M.D. Fla. March 28, 2013) ("Unlike other remedial federal civil rights legislation, most notably employment discrimination, neither the Fair Housing Act nor Section 1982 require that a victim of a discriminatory housing practice first exhaust his administrative remedies as a precondition to filing suit." (quoting 28 Am. Jur. Trials § 7 (1981)); United States v. Pacific Northwest Electric, Inc., No. CV-01-019, 2003 WL 24573548, at *21 (D. Idaho March 21, 2003) (collecting cases) ("Several courts have held that a plaintiff is not required to pursue conciliation or exhaust any administrative remedies before filing an action under the Fair Housing Act . . . ."); United States v. Sea Winds of Marco, Inc., 893 F. Supp. 1051, 1054 (M.D. Fla. 1995) (failure to engage in administrative procedures is not "detrimental to subsequent actions to enforce the Fair Housing Act"). Indeed, as then-District Judge Gerard Lynch noted in United States v. Hillman Housing Corp., "[d]epriv[ing] [] victims [of housing discrimination] access to judicial remedies because of administrative errors on the part of the agency assigned to assist them would defeat th[e] purpose [of the FHA]. Nor would [it] further Congress' goal of conciliating those disputes that can be resolved short of litigation" since complainants are allowed to "skip[] the HUD process (and potential administrative conciliation efforts) altogether." 212 F. Supp. 2d 252, 254-55 (S.D.N.Y. 2002).

Generally, when a litigant fails to engage in statutorily-prescribed administrative procedures the question is whether that failure deprives the court of jurisdiction, rather than whether the non-compliant litigant lacks standing. See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) (holding that "administrative exhaustion is not a jurisdictional requirement [for a Title VII action]; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses"); Paese v. Hartford Life & Accident Insurance Co., 449 F.3d 435, 439, 446 (2d Cir. 2006) (clarifying in context of ERISA that failure to exhaust administrative remedies "does not mean we lack subject matter jurisdiction, but rather is an affirmative defense, subject to waiver, estoppel, futility, and similar equitable considerations"); Lyons v. Litton Loan Servicing LP, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (discussing lack of standing and failure to exhaust as separate bases for motion under Federal Rule of Civil Procedure 12(b)(1)).

For this reason, the Government's reliance on Rhode Island Commission for Human Rights v. Graul, 120 F. Supp. 3d 110 (D.R.I. 2015), is unnecessary. (Pl. Memo. at 7-8). In that FHA case, the defendants argued that the "administrative process leading up to the filing of the complaint was flawed" because the plaintiff "did not give sufficient notice of the reliance on discriminatory impact" and because its "efforts at conciliation were inadequate." Graul, 120 F. Supp. 3d at 118 (emphasis omitted). The court analogized to Title VII cases, in which "[t]he exhaustion requirement serves to give a potential defendant 'prompt notice of the claim and to create an opportunity for early conciliation.'" Id. (quoting Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)). The notice requirement "serves to limit the scope of any subsequent complaint to 'the charge filed . . . and the investigation which can reasonably be expected to grow out of that charge.'" Id. (quoting Lattimore, 99 F.3d at 464). Relying on those principles, the court held that the

plaintiff could allege claims reasonably related to the charge that the complainant had filed with the administrative agency. Id. at 120. However, as noted above, the FHA does not require a plaintiff to engage in the administrative process, see, e.g., Sinisgallo, 865 F. Supp. 2d at 320-21; Pacific Northwest Electric, 2003 WL 24573548, at *21, or even to file a complaint with an administrative agency, see, e.g., Hart, 2013 WL 1278161, at *1 ("Although the Fair Housing Act provides that an aggrieved person may file a complaint with HUD, more immediate and meaningful relief is more likely obtainable if the complainant bypasses the administrative complaint process entirely and immediately files suit in federal district court." (quoting 28 Am. Jur. Trials § 7 (1981)). Where there is no requirement that a plaintiff file an administrative complaint at all, I cannot see why such a document, if filed, should serve to limit the allegations in an action in federal court.

Therefore, the Government's failure to complete the administrative procedures outlined in the FHA after Mr. Reich's 2017 administrative complaint does not render the proposed amendment futile.

## B. Prejudice

The defendant also contends that it will suffer undue prejudice if the amendment is allowed because "the proposed amendment will deprive [the] [d]efendant of administrative rights and remedies otherwise afforded under [the FHA]." (Def. Memo. at 2). This is particularly important here, it asserts, because Mr. Reich litigated a similar accommodation claim in state court and lost. (Def. Memo. at 2-3). This argument also fails.

First, the defendant does not have a right to attempt to "have the complaint dismissed at the administrative level and to create an administrative record" (Def. Memo. at 11) for the simple reason, discussed above, that engaging in the administrative adjudication process is not mandated under the FHA. Moreover, it is not clear what benefit the defendant would garner from administrative proceedings in connection with the 2017 complaint, as litigation is already pending. Additionally, as the Government points out, in its review of Mr. Reich's 2015 administrative complaint, HUD already analyzed the effect of the prior adjudication on the 2015 claim. (Plaintiff's Reply Memorandum in Further Support of Its Motion to Amend the Complaint ("Reply") at 5; HUD Determination at 2-4, 7). As the 2017 complaint is eerily similar to the 2015 complaint -- the major difference is merely that Mr. Reich asked for an accommodation allowing a different dog than Maddy to occupy his apartment -- "there is no basis to think that HUD would resolve this new complaint differently." (Reply at 5). Finally, to the extent that the defendant wants an opportunity to resolve this action without further litigation, "this Court's mediation program is available . . . by simple request to the Court, as are [] settlement services of [a] United States Magistrate Judge or any other reasonable mediation or conciliation process that any party suggests." Hillman Housing, 212 F. Supp. 2d at 255.

In sum, the defendant has not borne "the burden of establishing that amendment would be unduly prejudicial." Li v. 8868 Corp., No. 15 Civ. 4433, 2016 WL 7015734, at *2 (S.D.N.Y. Nov. 30, 2016).

**Conclusion**

For the foregoing reasons, the Government's motion to amend the complaint (Docket no. 20) is granted. Within seven days of the date of this Order the Government shall file its Amended Complaint.

Steven S. Sieratzki, who signed the defendant's submission as its counsel, shall promptly file a notice of appearance in this action. --------

**SO ORDERED.**

/s/_____

**JAMES C. FRANCIS IV**

PREET BHARARA
United States Attorney for the
Southern District of New York
By: SHARANYA MOHAN
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2737
Facsimile: (212) 637-2782
Email: sharanya.mohan@usdoj.gov

*Controller Case Law*
*Stay of Lower Court*
*TRO + Prelim grantes*
*ADA +*
*FHA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 16 Civ. _____ |
| v. | **COMPLAINT** |
| 111 EAST 88TH PARTNERS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, the United States of America, by its attorney, Preet Bharara, United States

Attorney for the Southern District of New York, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action for declaratory relief, injunctive relief, and monetary

damages under the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.* (the "Act"), brought

by the United States of America on behalf of Gregory Reich (the "Complainant") to redress

discrimination on the basis of disability.

2.      As alleged more fully below, defendant 111 East 88th Partners ("Defendant"),

located in Manhattan, New York, is the owner and operator of a 61-unit condominium building

located at 111 East 88th Street, New York, New York 10128.  Defendant has unlawfully

discriminated against Complainant based on his disability by denying his request for a

reasonable accommodation and interfering, coercing, or intimidating Complainant in his exercise or enjoyment of rights protected by the Act.

    3.    Defendant's conduct violates the Act and should be declared unlawful and enjoined, and appropriate monetary damages should be awarded.

## JURISDICTION AND VENUE

    4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

    5.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred there, and the property that is the subject of this suit is located there.

## PARTIES AND PROPERTY

    6.    The United States of America is the plaintiff in this action.

    7.    Defendant is a partnership that owns and operates a 61-unit condominium building located at 111 East 88th Street, New York, New York 10128 (the "Property"). Defendant maintains a principal place of business at 242 West 49th Street, New York, New York 10019.

    8.    Complainant Gregory Reich is the property lessee of an apartment owned by Defendant in the Property.

    9.    Complainant's apartment in the Property is a "dwelling," as defined by the Act, 42 U.S.C. § 3602(b).

    10.    Complainant is an "aggrieved person" as that term is defined in the Act, 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendant's conduct.

## PROCEDURAL BACKGROUND

11.     On July 27, 2015, Complainant timely filed a verified complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging that (1) Defendant denied him reasonable accommodation; (2) Defendant denied him reasonable accommodation in retaliation for a previous complaint that Complainant had filed with HUD; and (3) Defendant sought a burdensome and unnecessary quantity of medical information in connection with his request for a reasonable accommodation to intimidate him and interfere with his rights under the Act.

12.     Pursuant to the requirements of 42 U.S.C. § 3610(a) and (b), the Secretary of HUD (the "Secretary") conducted and completed an investigation of the administrative complaint.

13.     On September 21, 2016, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g), charging Defendant with engaging in discriminatory housing practices in violation of the Act.

14.     On October 6, 2016, Defendant timely elected to have the charge resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a).  Following this election, the Secretary authorized the Attorney General to file this action on Complainant's behalf, pursuant to 42 U.S.C. § 3612(o)(1).

## FACTUAL ALLEGATIONS

15.     Complainant Gregory Reich suffers from depression and Other Specified Personality Disorder.  He has also long suffered from chronic kidney disease, in addition to a litany of medical problems that include diabetes requiring insulin and coronary artery disease.  In or about March 2015, he was diagnosed with End Stage Renal Disease, requiring dialysis and,

potentially, a kidney transplant. Complainant's new diagnosis has led to a significant deterioration of his mental health and a reduced capacity to care for himself. Complainant is a person with a disability as defined by the Act, 42 U.S.C. § 3602(h).

16.     Complainant's father entered into a written lease dated August 9, 1960 with Defendant's predecessor-in-interest. Article 35 and Rule and Regulation No. 8 of the lease prohibit tenants from keeping and/or harboring a dog without express written permission of Defendant. Paragraph 19 of the lease requires the tenant to pay attorney's fees incurred by Defendant for prosecuting or defending legal actions pertaining to the tenancy.

17.     Complainant's parents vacated the subject apartment in 1980, and Complainant succeeded his parents as the statutory tenant. Complainant has lived in the subject apartment his entire life. The apartment is subject to the New York City Rent and Rehabilitation Law, or rent control. Although the Property converted to a condominium in 1987, pursuant to Article 9-B of the New York Real Property Law, Complainant was not required to, and did not, purchase his unit, instead continuing as a rent controlled tenant subject to the terms of the original 1960 lease.

I.     **Complainant's Previous Request for Reasonable Accommodation and Related Proceedings**

18.     In 1997, Complainant adopted a dog, Orion. Complainant did not seek a reasonable accommodation from Defendant at the time. In 1998, Defendant commenced an eviction case against Complainant. The eviction case was dismissed pursuant to New York City's 3 month pet rule, which allows a tenant to keep a pet in violation of a lease provision if the landlord fails to take action within 3 months of learning of a pet's presence in the apartment.

19.     Orion passed away in June 2006. Shortly thereafter, in September 2006, Complainant adopted another dog, named Maddy. Maddy is a medium-sized mixed breed dog that Complainant rescued from an animal shelter.

20.     On September 12, 2006, Defendant served Complainant with a 15-day notice to cure the violation of the no-pet clause of the lease.

21.     On September 30, 2006, Defendant served Complainant with a Notice of Termination to terminate his tenancy effective October 31, 2006.  In response, on October 24, 2006, Complainant wrote to Defendant requesting that Maddy be allowed to remain in the apartment as a reasonable accommodation.  On October 31, 2006, Defendant served Complainant with a Holdover Notice of Petition in New York City Housing Court, dated November 1, 2006.

22.     On November 20, 2006, Complainant filed a discrimination complaint with HUD, which was referred by HUD to the New York State Division of Human Rights ("NYSDHR") for investigation.  In March 2007, NYSDHR issued a determination of probable cause and scheduled a hearing.  Defendant elected to have the complaint adjudicated by the Supreme Court of New York.  NYSDHR therefore commenced litigation in the Supreme Court of New York, New York County, Index Number 402894/2007, alleging that Defendant unlawfully discriminated against Complainant.  Upon motion by Complainant, the Housing Court eviction action was stayed pending the outcome of the NYSDHR litigation.

23.     On September 5, 2014, the Supreme Court of New York granted a motion *in limine* filed by Defendant in the NYSDHR litigation precluding Complainant from introducing evidence that he was currently impaired as a result of his previous psychological conditions, based on findings by Complainant's therapist that, as of March 2014, Complainant no longer met the criteria for his previous diagnoses of Dysthymic Disorder or Schizoid Personality Disorder. On October 29, 2014, the Supreme Court of New York dismissed the NYSDHR action without prejudice based on the September 5, 2014 decision.

5

24.     In February 2015, Defendant filed a motion in the Housing Court eviction proceeding, seeking summary judgment of possession, issuance of a warrant of eviction, and a money judgment for market-rate rent for Complainant's use and occupancy of the apartment during the eviction proceeding, in the amount of $304,850 plus interest, and attorney's fees.  On February 26, 2016, the Housing Court denied the motion for summary judgment and further stayed the Housing Court proceeding pending the outcome of Complainant's July 2015 HUD complaint.

25.     The Housing Court eviction proceeding remains stayed.  Prior to HUD's issuance of the Charge of Discrimination, Defendant filed a motion in the Housing Court to lift the stay, but the Housing Court has not acted on that motion.

## II.     Complainant's Instant Request for Reasonable Accommodation

26.     On June 18, 2015, Complainant, through his counsel, requested a reasonable accommodation to keep an emotional support dog in his apartment based upon updated medical information provided by his physician and therapist.  Complainant provided Defendant with a letter dated May 16, 2015 from his treating physician and a letter dated June 8, 2015 from his therapist.

27.     Complainant's physician stated in her May 16, 2015 letter that Complainant's existing diagnosis of chronic kidney disease had recently been revised to End-Stage Renal Disease, requiring hemodialysis or peritoneal dialysis, and, potentially, a kidney transplant to avoid an otherwise imminent death.

28.     Complainant's therapist stated in his June 8, 2015 letter that this new physical illness, diagnosed in March 2015, had a serious impact on Complainant's mental and emotional state, leading to new diagnoses of Other Specified Depressive Disorder with melancholic

features, and Other Specified Personality Disorder.  Living with Maddy ameliorated Complainant's depression, which consequently increased his capacity to care for himself and manage the symptoms of his physical illness.

29.     On June 28, 2015, Defendant requested that Complainant provide the following in connection with his request for an accommodation:  (1) "Copies of all of . . . [Complainant's therapist's] session notes relating to his session with [Complainant] for the period commencing May 1, 2014 to the present," including typed copies of any handwritten notes; and (2) "[c]opies of [Complainant's] medical records and medical history."

30.     Defendant also stated that it reserved the right to have Complainant examined by a physician it had selected, and to require Complainant, his physician, and his therapist to appear to answer questions under oath relating to Complainant's disability and accommodation request.

31.     Believing Defendant's requests for medical information were so burdensome as to constitute a denial of the reasonable accommodation request, Complainant filed his complaint with HUD.

## FIRST CLAIM FOR RELIEF

### Denial of Reasonable Accommodation under the Act

32.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth in this paragraph.

33.     Defendant violated the Fair Housing Act, 42 U.S.C. § 3604(f)(2), by discriminating against Complainant in the terms, conditions, and privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability.

34.     Defendant violated the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), by refusing to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

35.     The discriminatory actions of Defendant were intentional, willful, and taken in disregard for Complainant's rights.

## SECOND CLAIM FOR RELIEF

### Interference, Coercion, or Intimidation under the Act

36.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth in this paragraph.

37.     Defendant violated the Fair Housing Act, 42 U.S.C. § 3617, by coercing, intimidating, threatening, or interfering with Complainant in the exercise or enjoyment of, or on account of Complainant having exercised or enjoyed a right granted or protected by Section 3604 of the Act.

WHEREFORE, Plaintiff requests that the Court enter judgment:

1.     Declaring that Defendant's policies and practices as set forth above violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.*;

2.     Enjoining Defendant, its officers, employees, agents, successors, and all other persons in active concert or participation with it, from:

(a)     discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

(b)     failing or refusing to make reasonable accommodations as required by 42

U.S.C. §§ 3604(f)(3)(B);

(c)     failing or refusing to take such affirmative steps as may be necessary to

restore, as nearly as practicable, aggrieved persons to the position they

would have been in but for the discriminatory conduct; and

(d)     coercing, intimidating, threatening, or interfering with any person in the

exercise or enjoyment of, or on account of any person having exercised or

enjoyed, or on account of any person having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or

protected by Section 3604 of the Fair Housing Act;

3.     Awarding monetary damages to Complainant for injuries caused by Defendant's

discriminatory conduct, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

5.     Granting such further relief as this Court may deem just and proper.

The United States requests trial by jury.

Dated: New York, New York
        December 7, 2016

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York

                        By:     /s/ Sharanya Mohan
                                    SHARANYA MOHAN
                                    Assistant United States Attorney
                                    86 Chambers Street, Third Floor
                                    New York, NY 10007
                                    Tel: (212) 637-2737
                                    Fax: (212) 637-2786
                                    sharanya.mohan@usdoj.gov

(the "FHA"), 42 U.S.C. § 3601 et seq.; and Title II of the Americans with Disabilities Act of

1990 (the "ADA"), 42 U.S.C. § 12131 et seq. Presently before the Court is the Plaintiffs' motion

for a preliminary injunction. For the reasons set forth below, the Plaintiffs' motion is granted.

## I. BACKGROUND

The defendant Town of Islip Housing Authority is a municipal housing authority, created

in accordance with the provisions of the New York State Public Housing Law. The IHA is

categorized as a public housing authority ("PHA") under the United States Department of

Housing and Urban Development ("HUD") regulations. Pursuant to HUD regulations, the IHA

maintains a public housing program ("the Program"), through which it provides housing for

eligible families, including low income families and families with elderly and disabled

individuals. The defendant Richard Wankel is the Executive Director in charge of the Program

for the IHA.

On June 10, 2010, the plaintiffs, Kathie Sinisgallo and Steve Tsilimparis, entered into a

lease for public housing provided by the IHA located at 81 Mill Pond Lane, Bay Shore, New

York. On the lease, Sinisgallo is identified as the "tenant" and Tsilimparis is identified as a "co-

tenant". Both Sinisgallo and Tsilimparis assert that they are mentally disabled individuals.

Sinisgallo contends that she suffers from paranoid schizophrenia; receives psychiatric treatment

for her illness from the Hands Across Long Island Personal Recovery Program; and that her

income consists of Social Security Disability Insurance ("SSDI") payments because she is

permanently disabled. According to Tsilimparis, he suffers from bipolar disorder; receives

psychiatric care for his illness from the Family Service League's South Shore Family Center

Clinic; and his income consists of Supplemental Security Income ("SSI") payments because he is

permanently disabled. Although not married, the Plaintiffs have been engaged in a romantic

relationship for more than thirty years and have lived together continuously for that period.  The Plaintiffs described their relationship as one that is "[s]imilar to a spousal relationship". (Compl., ¶ 3.)

On or about May 23, 2011, Sinisgallo submitted a complaint to defendant Richard Wankel's office, stating that her neighboring tenant, Michael Collins, shot the Plaintiffs' pet cat with his BB gun and injured the cat superficially.  Subsequently, on May 26, 2011, Tsilimparis confronted Collins while Collins was spraying the grass in front of the Plaintiffs' apartment.  The culmination of this interaction resulted in Tsilimparis physically striking Collins.

On July 13, 2011, Collins filed a complaint with the Suffolk County Police Department regarding the May 26, 2011 altercation.  The criminal violation was Adjourned in Contemplation of Dismissal, pursuant to New York Criminal Procedure Law § 170.55.

On May 27, 2011, Sinisgallo received a notice from the IHA terminating her tenancy and participation in the Program.  On June 15, 2011, Sinisgallo requested an informal settlement telephone conference to review the determination to terminate her residency.  This conference was held between Sinisgallo and Wankel.  In this informal hearing, Sinisgallo was not represented by counsel, and argued that her tenancy should not be terminated because Tsilimparis struck Collins in self-defense.  On August 1, 2011, Sinisgallo received a Summary Decision and termination notice, which stated that the IHA had determined to continue the eviction process. (Compl., Ex. B.)  Consistent with IHA procedures, Sinisgallo made a written request for a formal administrative hearing, which was granted.

The administrative hearing to review the termination of the Plaintiff's tenancy was held over two sessions on December 20, 2011 and January 9, 2012.  These proceedings were presided

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

KATHIE SINISGALLO, STEVE
TSILIMPARIS,

                    Plaintiffs,

          -against-

TOWN OF ISLIP HOUSING AUTHORITY,
RICHARD WANKEL, in his capacity as
Executive Director of The Town of Islip
Housing Authority, PAUL E. LEVITT, in his
capacity as Hearing Officer,

                    Defendants.

----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-1733(ADS)(AKT)

**APPEARANCES:**

**Nassau/Suffolk Law Services Committee Inc.**
*Attorneys for the plaintiffs*
1757 Veterans Highway, Suite 50
Islandia, NY 11749
      By: Darlene Rosch, Esq., Of Counsel

**William R. Garbarino, Esq.**
*Attorneys for the Town of Islip Housing Authority and Richard Wankel*
40 Main Street
P.O. Box 717
Sayville, New York 11782

**SPATT, District Judge.**

      The Plaintiffs, Kathie Sinisgallo ("Sinisgallo") and Steve Tsilimparis ("Tsilimparis")

bring this action against the Defendants Town of Islip Housing Authority ("IHA"), Richard

Wankel, and Paul E. Levitt, alleging that the Defendants terminated their tenancy in public

housing in violation of their constitutional due process rights; United States Housing Act, 42

U.S.C § 1437d(k); Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29

U.S.C. § 794, the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 5:12-cv-557-D |
| STATE OF NORTH CAROLINA, | |
| Defendant. | |

## JOINT MOTION TO ENTER MODIFICATION OF SETTLEMENT AGREEMENT AND EXTEND JURISDICTION

Pursuant to the Court's September 21, 2017 Order, D.E. 29, Plaintiff United States and Defendant State of North Carolina jointly move this Court to enter the parties' proposed order modifying the Settlement Agreement, D.E. 2-2, to extend the term of the Agreement from July 1, 2020 to July 1, 2021, as set forth in the Modification of the Settlement Agreement ("Modification") attached as Attachment A, and retaining jurisdiction to enforce the Agreement as modified.

On August 23, 2012, the parties jointly moved the Court to enter an order conditionally dismissing this action, without prejudice, under Federal Rule of Civil Procedure 41(a)(2), and to retain jurisdiction to enforce the Agreement, in accordance with its terms, for its duration. The Agreement resolved the claims of the United States, which it made following an investigation into allegations that the State of North Carolina was violating Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134, as interpreted by the United States Supreme Court in *Olmstead v. L.C.*, 527 U.S. 581 (1999). On October 5, 2012, the Court granted the

1

motion to dismiss, conditionally dismissed the action, and retained jurisdiction to enforce the Agreement. D.E. 13.

On January 9, 2017, the United States moved to enforce the Agreement, contending that the State had breached Sections III(B)(3) and III(D)(3) of the Agreement, and requesting specific performance according to a timeline set forth in an attached proposed order. D.E. 15. On September 21, 2017, the Court granted the United States' motion in part and denied it in part. D.E. 29. Specifically, the Court determined that the State was not in substantial compliance with the July 1, 2016 obligations under Sections III(B)(3) and III(D)(3) of the Agreement, but ordered the parties to negotiate in good faith and reach agreement on the remedy in light of the Court's conclusions concerning Sections III(B)(3) and III(D)(3). The Court ordered the parties to file with the Court, by October 27, 2017, any agreed-to modifications of the Agreement.

The parties have agreed on modifications to the Agreement, which are set forth in the Modification (Attach. A). The Modification alters the timelines and numeric requirements of Sections III(B)(3) and III(D)(3) of the Agreement, alters Sections V(B) and V(C) accordingly, and extends the Agreement's term by one year from July 1, 2020 to July 1, 2021. These changes are necessary and appropriate to enable the State to meet its supported housing and supported employment services obligations by the end of the Agreement. The parties have also added a sentence to Section V(C) providing that if the State substantially complies with the Agreement before that time, the United States will not unreasonably decline to join a motion to terminate the Agreement early.  The Independent Reviewer participated in the parties' negotiations of these modifications and has authorized the parties to represent that she supports the Modification.

For the reasons set forth above, the parties respectfully request that the Court enter the attached proposed order to modify the Settlement Agreement and retain jurisdiction to enforce the Agreement as modified.


This 27th day of October, 2017.                    Respectfully submitted,

FOR THE UNITED STATES:


JOHN STUART BRUCE                          JOHN M. GORE
United States Attorney                            Acting Assistant Attorney General
Eastern District of North Carolina                Civil Rights Division

                                                  REBECCA B. BOND
                                                  Acting Deputy Assistant Attorney General
G. NORMAN ACKER III                        Civil Rights Division
Assistant United States Attorney
Eastern District of North Carolina                ANNE S. RAISH
                                                  Acting Chief
                                                  Disability Rights Section
                                                  Civil Rights Division

                                                  ELIZABETH S. WESTFALL
                                                  Deputy Chief
                                                  Disability Rights Section
                                                  Civil Rights Division

                                                  /s/ Julia M. Graff
                                                  JULIA M. GRAFF
                                                  Trial Attorney
                                                  Disability Rights Section
                                                  Civil Rights Division
                                                  U.S. Department of Justice
                                                  950 Pennsylvania Ave NW—NYA
                                                  Washington DC 20530
                                                  julia.graff@usdoj.gov
                                                  Tel. (202) 616-5319
                                                  Fax (202) 514-7821

FOR THE STATE OF NORTH CAROLINA


JOSH STEIN
Attorney General

/s/ Michael T. Wood
MICHAEL T. WOOD
Special Deputy Attorney General

Brian D. Rabinovitz
Josephine Tetteh
Assistant Attorneys General

North Carolina Department of Justice
114 West Edenton Street
P.O. Box 629
Raleigh, NC 27602-0629

mwood@ncdoj.gov
brabinovitz@ncdoj.gov
jtetteh@ncdoj.gov

Tel. (919) 716-6800
Fax (919) 716-6756

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of October 2017, I electronically filed the Joint Motion to Enter Modification of Settlement Agreement and Extend Jurisdiction using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Julia Graff*
Julia M. Graff