UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CAROL NOE,                                              :
                                                       :
            Plaintiff,                                 :        **REPORT AND RECOMMENDATION**
                                                       :
            -v-                                        :        19-CV-1455 (JHR) (RFT)
                                                       :
RAY REALTY, et al.,                                    :
            Defendants.                                :

-------------------------------------------------------------------X

**ROBYN F. TARNOFSKY, United States Magistrate Judge.**

TO THE HONORABLE JENNIFER H. REARDEN, UNITED STATES DISTRICT JUDGE:

On February 15, 2019, Plaintiff Carol Noe brought a pro se complaint against Defendants Ray Realty, Zavisa Zecevic, John Militec, Julia Zecevic, Dejan Zecevic (together, the "Original Defendants"), as well as 15 John and Jane Does, alleging violations of the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act (the "FHA"), 42 U.S.C. 3601, et seq., and the Americans with Disabilities Act ("ADA"), as well as constitutional violations under 42 U.S.C. § 1983, in connection with Defendants' alleged acts of disability discrimination and retaliation. She alleged, among other things, that Original Defendants refused to provide reasonable accommodations for her disability when making repairs to her apartment. (*See* ECF 2, Compl.) The operative complaint appears at ECF 95 (the "AC"). It names several additional Defendants: TRUE Coffee, TRCU Coffee, 384 Court, Thomas Cummings, and Morten Teljum (together, the "Coffee Defendants"); Daejan NY Ltd., Labe Twerski, Sam Becker, and 41-25 44th Street Owners Corp. (together, the "Twerski Defendants"); Robert Gregor ("Gregor");  41-25 44th Street Apt. A7 Queens, RRM Realty, Adi Nahmani, 1651 Coney Island Avenue 4 11230 (together, the "Non-Appearing Defendants"); and 34 John and Jane Does (the John and Jane

Does, together with the Coffee Defendants, Twerski Defendants, Gregor, and Non-Appearing

Defendants, are the "New Defendants"). It adds claims under the Rehabilitation Act, and for

fraud, intentional infliction of emotional distress, and invasion of privacy. (*See* ECF 95, AC at 4.)[1]

Pending before the Court are motions to dismiss by Original Defendants, Coffee

Defendants, Twerski Defendants, and Gregor (*see* ECF 173, Original Defs.' Mot. To Dismiss; ECF

175, Coffee Defs.' Mot. to Dismiss; ECF 200, Twerski Defs.' Mot. To Dismiss; ECF 216, Gregor

Mot. To Dismiss) pursuant to Rule 12(b)(6) to dismiss the AC. I have reviewed the parties'

filings, including, among other documents, Plaintiff's AC and supporting exhibits (ECF 95, AC);

Plaintiff's Response to Original Defendants' Opposition to Her Motion To Amend the Original

---

[1]     On January 3, 2024, I issued an Order of Service for the Non-Appearing Defendants, Gregor, and the Twerski Defendants because those individuals and entities were named in the AC but had never previously been served and had not yet appeared. (*See* ECF 170, Order of Service.) The Coffee Defendants were also added as defendants in the AC, but they apparently had been notified of the case; they appeared and are represented by Original Defendants' former counsel. (*See* ECF 110. Not. of Substitution of Counsel; ECF 144. Coffee Defs.' Mot. To Dismiss ECF 114.) The Non-Appearing Defendants, Gregor, and Twerski Defendants were served in March 2024. (*See* ECF 184, 185, 186, 187, 188, 189, 190, 191, 192, 193.) The Twerski Defendants have appeared and moved to dismiss. (*See* ECF 200, Twerski Defs.' Mot. to Dismiss.) Gregor appeared and filed an untimely motion to dismiss. (*See* ECF 216, Gregor Mot. To Dismiss.) The Non-Appearing Defendants did not appear.

Some of Plaintiff's filings list still other additional individuals and entities in the caption as supposed defendants. (*See, e.g.*, ECF 166, Mot. for Recons.) However, those additional putative defendants are not listed in the caption of the AC or discussed in the AC, and therefore those individuals and entities are not parties to the case. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); *Owens v. Perez*, No. 17-CV-0657 (RNC) (DFM), 2017 WL 11807650, at *5 (D. Conn. Dec. 6, 2017) (citing cases dismissing claims against a defendant for failure to comply with Rule 10(a)), *report and recommendation adopted*, 2018 WL 11580891 (D. Conn. Jan. 18, 2018); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (dismissing defendants from case when the complaint lacked any allegations about how the defendants injured the plaintiff), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000).

Complaint (ECF 107); and the Original, Coffee and Twerski Defendants' and Gregor's

Memoranda of Law and Declarations in Support of Their Motions to Dismiss the AC (ECF 173,

174, 175, 200, 216) and their Reply Memoranda (ECF 212, 214, 217, 218). Because Plaintiff is

pro se, I interpret all Plaintiff's filings to raise the strongest claims they may suggest. *See*

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009) (explaining that the Court is obliged to construe pro se pleadings liberally).

For the reasons set forth below and as specified herein, I respectfully recommend that

Defendants' motions be GRANTED but that Plaintiff be granted leave to replead some of her

claims against some Defendants.

**FACTUAL BACKGROUND**

For purposes of the pending motion to dismiss, the Court accepts Plaintiff's allegations

as true and draws all reasonable inferences in her favor. *See City of Providence v. BATS Glob.*

*Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017). Plaintiff alleges as follows:

Defendants own 446 West 58th Street, New York, New York, a 15-unit apartment

building. (*See* ECF 95, AC ¶ 20.) Plaintiff lived in a rent stabilized apartment at that address since

2005. (*See id.* ¶ 21.) Plaintiff is a "permanently disabled protected ADA class member, on SSD

and [] a senior citizen." (*Id.* ¶ 21.) Plaintiff suffers from "severe respiratory disabilities." (*Id.* ¶

35.)

Plaintiff alleges that Defendants discriminated against her due to her disability in

multiple ways: (1) ignoring her "hundreds of written requests," sent between January of 2018

and February of 2019, for reasonable accommodations in how mold, painting, floor and other

repairs are effectuated; (2) refusing to sign and provide renewal leases for 2018 and 2019; (3) refusing to give Plaintiff a Disability Rent Increase Exemption ("DRIE") in 2018 and 2019;[2] (4) filing five illegal housing court eviction actions against her, beginning in December of 2016 and continuing through February of 2019, and preventing her from defending herself and from bringing counterclaims in those cases; (5) filing complaints with regulatory agencies regarding repairs to her apartment; (6) trying to convince adult protective services ("APS") that she should be under its supervision, including by placing garbage outside her door to make it seem as though she created problems within the apartment building and by trying to cause other tenants to lodge complaints that she was a danger to herself and others; (7) vandalizing the door of her apartment; (8) ringing her doorbell multiple times a day at all hours of the day and night; and (9) arranging, beginning in 2016, for her to receive thousands of robocalls and spam emails. (*Id.* ¶¶ 15, 29, 32, 37-39, 53.) Plaintiff also alleges that those actions constituted

---

[2]      On a Rule 12(b)(6) motion, a court may "take judicial notice of local ordinances and regulations." *Snowden v. Solomon*, No. 17-CV-2631 (VB), 2018 WL 1406624, at *3 (S.D.N.Y. Mar. 20, 2018) (internal citation omitted). A court may also take judicial notice of a "law, legislative facts, or factual matters that are incontrovertible" on a Rule 12(b)(6) motion. *See Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50, 58 (E.D.N.Y. 2018) (citing *Oneida Indian Nation of New York v. New York*, 691 F.2d 1070, 1086 (2d Cir. 1982)); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."). The DRIE program exempts from rent increases a tenant of a rent regulated apartment who qualifies as a person with a disability and meets additional eligibility criteria pursuant to local law. *See* N.Y. City Admin. Code §§ 26-613 (enacting the DRIE program pursuant to N.Y. Real Property Tax L. § 467-c); Rules of the City of N.Y. ("RCNY") § 52-02 et seq. (codifying the administration of the DRIE program under New York City Department of Finance, effective January 6, 2016).

retaliation for her protected activity of making complaints about housing code violations and requesting reasonable accommodations in connection with necessary repairs. (*Id.*)

**PROCEDURAL HISTORY**

This case was referred to a magistrate judge for general pretrial purposes, including discovery, non-dispositive pretrial motions, and settlement, as well as for dispositive motions (*see* ECF 22, Order of Reference), and the reference was assigned to me on November 15, 2023.

**I.    The Original Complaint**

Plaintiff brought her original pro se complaint (the "Complaint") on February 15, 2019. (*See* ECF 2, Compl.) Original Defendants answered the Complaint on April 17, 2019. (*See* ECF 34, Original Defs.' Answer.)[3] On April 23 and June 24, 2019, Plaintiff moved for a temporary restraining order, seeking to enjoin state court eviction proceedings. (*See* ECF 38, Ex Parte Mot. for TRO; ECF 68, Mot. for Emergency TRO.) On July 2, 2019, Magistrate Judge Ona T. Wang recommended denying the motion, on the ground, among others, that the relief sought was prohibited by the Anti-Injunction Act (*see* ECF 71, Report and Recommendation), which recommendation was adopted by the Court on January 31, 2020. (*See* ECF 96, Order.)

**II.    The Amended Complaint**

On June 7, 2019, Plaintiff filed a motion for leave to amend the Complaint (*see* ECF 56, Mot. for Leave To Amend), but she did not include a proposed amended complaint. Original Defendants opposed the motion. (*See* ECF 58, Original Defs.' Affirmation in Opp. to Mot. for

---

[3]    Original Defendants filed what appears to be a duplicate copy of the answer at ECF 35 as well.

Leave to Amend; ECF 59, Original Defs.' Memo. of Law in Opp. to Mot. for Leave To Amend.) Plaintiff filed her proposed amended complaint on November 12, 2019. (*See* ECF 91, "First Amended Complaint".) On December 17, 2019, Plaintiff asked to submit supplemental exhibits to her proposed amended complaint. (*See* ECF 92, Letter.) On January 2, 2020, Plaintiff refiled her proposed amended complaint, this time with exhibits. (*See* ECF 95, AC.) On February 28, 2020, Original Defendants filed a supplemental opposition to Plaintiff's motion to amend the complaint. (*See* ECF 99, Original Defs.' Aff. in Opp. to Mot. for Leave to Amend; ECF 100, Original Defs.' Memo. of Law in Opp. to Mot. for Leave to Amend.) On July 1, 2020, Plaintiff filed what she called "opposition reply to not dismiss first amended complaint," which I construe as a reply brief in further support of her motion to amend. (*See* ECF 107, Reply Memo. in Supp. of Mot. for Leave To Amend.)

On July 27, 2020, Plaintiff was ordered to refile the exhibits to her proposed amended complaint. (*See* ECF 109, Order.) On June 28, 2021, Plaintiff was ordered to refile the exhibits to her proposed amended complaint in hard copy. (*See* ECF 113, Order.) On July 28, 2021, Plaintiff filed a document objecting to the order to refile her exhibits to the proposed amended complaint in hard copy; that document also sought miscellaneous other relief from the Court. (*See* ECF 114, Letter.)

On June 5, 2023, the Court ruled that ECF 114 would be deemed the operative complaint. (*See* ECF 135, Order.) On June 28, 2023, Original Defendants and Coffee Defendants moved to dismiss ECF 114. (*See* ECF 140, Original Defs.' Mot. To Dismiss ECF 114; ECF 141, Aff. Supporting Original Defs.' Mot.; ECF 142, Original Defs.' Memo. of Law; ECF 144, Coffee Defs.'

Mot. To Dismiss ECF 114; ECF 145, Decl. Supporting Coffee Defs.' Mot.)[4] On October 31, 2023, Plaintiff opposed the motion to dismiss on the ground that she did not intend ECF 114 to be her amended complaint. (*See* ECF 153, Opp. to Making ECF 114 the Operative Compl.) She objected in at least one other filing (*see* ECF 159, Letter) to the order deeming ECF 114 to be the operative complaint.

I construed ECF 153 and ECF 159 to be a motion to withdraw ECF 114 as the operative complaint and to deem ECF 95 as the AC. In opposing Plaintiff's motion to amend the original complaint, Defendants had pointed out deficiencies in ECF 95 and argued that permitting that amendment would be futile. (*See* ECF 100, Original Defs.' Memo. of Law in Opp. to Mot. for Leave To Amend at 4-8.) However, I granted the motion to amend the complaint to make ECF 95 the AC, because "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted). Plaintiff had "not yet had the benefit of a decision of the Court explaining the pleading standards necessary for her claims to survive a motion to dismiss." *Al-Haj v. Akuamoah,* No. 19-CV-6072 (LJL), 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021). (ECF 162, Order at 2-3.)

---

4    ECF 143 appears to be a duplicate copy of ECF 141.

**III.    The Motions To Dismiss the Amended Complaint**

Since ECF 114 was no longer the operative complaint, I stated that Defendants could file a letter on the docket requesting to withdraw their pending motions to dismiss that version of the complaint (*see* ECF 140, Original Defs.' Mot. To Dismiss; ECF 144, Coffee Defs.' Mot. To Dismiss), without prejudice to filing motions to dismiss ECF 95. (*See* ECF 162, Order at 3.) I said that if they did not ask to withdraw the pending motions to dismiss by January 2, 2024, I would issue a Report and Recommendation to Your Honor recommending that Original Defendants' and Coffee Defendants' motions to dismiss ECF 114 (ECF 140 and ECF 144) be dismissed as moot. (*See* ECF 162, Order at 3.) That Order also included a briefing schedule in the event that Defendants chose to move to dismiss the AC. (*See id*.) Original Defendants and Coffee Defendants submitted letters asking for leave to withdraw their motions to dismiss ECF 114 (ECF 163 Original Defs.' Letter; ECF 167, Coffee Defs.' Letter), which leave I granted. (*See* ECF 164, Order.)

On December 19, 2023, Plaintiff asked for a stay of my Order of December 15, 2023 (ECF 162), which I interpreted to be a request for reconsideration of the Order insofar as it contemplated a motion to dismiss ECF 95. (*See* ECF 166. Mot. for Recons.) Plaintiff took the position that she had not consented to having a magistrate judge issue orders in her case and that Defendants could not move to dismiss the AC because they had answered the original complaint. I denied the request for reconsideration. (*See* ECF 169, Am. Op. and Order.)

Original Defendants and Coffee Defendants moved to dismiss on, respectively, January 15 and 16, 2024. (*See* ECF 173, Original Defs.' Mot. To Dismiss AC; ECF 174, Original Defs.'

Memo. of Law in Supp. of Mot. To Dismiss AC; ECF 175, Coffee Defs.' Mot. To Dismiss.) They argue that Plaintiff fails to state a claim: for violation of the FHA, because she does not allege that Defendants' actions were influenced by her disability; for violation of the ADA, because no Defendant is a public entity; and for fraud, intentional infliction of emotional distress, or invasion of privacy, because she does not plead facts that could support those claims. (*See* ECF 174, Original Defs.' Memo. at 8, 10-11.)

Twerski Defendants moved to dismiss on April 19, 2024. (*See* ECF 200, Twerski Defs.' Mot. To Dismiss (including supporting affidavits and memorandum of law).) They make several of the same arguments as Original Defendants and Coffee Defendants, and in addition they assert that the AC contains no factual allegations linking the Twerski Defendants to Plaintiff's tenancy. (*See* ECF 200-4, Twerski Defs.' Memo. at 9-12.)

Defendant Gregor filed an untimely motion to dismiss on July 12, 2024. (*See* ECF 216, Gregor Mot. To Dismiss.) He did not provide an explanation for the lateness of his filing, nor did he request leave to file a late motion to dismiss. His motion relied on an affirmation denying his involvement with Plaintiff's building, other than as counsel to Defendant Ray Realty in an unrelated matter. (*See* ECF 216-2, Gregor Aff. in Support of Motion To Dismiss ¶¶ 5-6.)[5]

---

[5]   I recommend considering the legal arguments in Gregor's filing even though the filing is untimely. *See, e.g., Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (explaining that "the defense of failure to state a claim is not waivable" and is "preserved from the waiver mechanism in Rule 12(h)"). However, to the extent that Gregor's filing makes arguments based on facts of which the Court may not take judicial notice, those arguments should not be considered. All of Gregor's remaining arguments were previously made by other Defendants. As a result, Plaintiff is not prejudiced by his late filing, and she is not entitled to additional time to respond to any argument appropriately made in his late filing.

**IV.    Plaintiff's Request for an Extension of Time To Respond to the Motions To Dismiss**

On June 17, 2024, Plaintiff moved for an extension of time until September 30, 2024 to oppose Defendants' motions to dismiss the AC as well as for an order of service on additional defendants and for appointment of pro bono counsel. (*See* ECF 206, Letter-Motion.) On June 20, 2024, I denied Plaintiff's motion. (*See* ECF 208, Order.) In particular, in denying Plaintiff's request for an extension of time, I reminded Plaintiff that:

As I noted in my order of April 30, 2024 (ECF 203), when I denied Plaintiff's prior request for an extension of time until September 30, 2024 to respond to the pending motions to dismiss, this case has been pending for over five years; Plaintiff has requested and received numerous extensions of time based on her statements, supported by [her] doctor's notes, that health issues have prevented her from meeting deadlines in this case. (*See id*.) The original briefing schedule in this case gave Plaintiff two months to respond to the motions to dismiss by the defendants who had been served at that time. (*See id*.) On February 15, 2024, I granted Plaintiff's request for an extension of time until May 30, 2024 to oppose those motions to dismiss, which was nearly two additional months; that order stated that no further extensions of time would be granted absent good cause shown. (*See* ECF 182, Order.) On April 19, 2024, some of the later-served Defendants filed their own motion to dismiss; Plaintiff's opposition would have been due on May 3, 2024, but I sua sponte extended her time until June 28, 2024 to oppose that motion to dismiss, and I also extended her time to respond to the

original motions to dismiss until the same date. (*See* ECF 203, Order at 2.) In that

order, I wrote: "Plaintiff is cautioned that given the generous amount of time she

has been given to oppose the motions to dismiss, no further [extensions] will be

granted absent extraordinarily good cause shown." (*Id*. at 3.) Given the multiple

prior extensions previously given to Plaintiff, resulting in her having over five

months to respond to the original motions to dismiss and over two months to

respond to the later-filed and substantially similar motion to dismiss, her chronic

illness cannot constitute such extraordinarily good cause shown. *See Payne v.*

*Oldcastle Precast, Inc.*, No. 10-CV-0887 (BSJ) (FM), 2012 WL 5873595, at *1

(S.D.N.Y. Nov. 19, 2012) (holding that "[t]he latitude accorded a pro se litigant

[does not] excuse [that litigant] from meeting the requirements necessary to

respond to dispositive motions"); *see also McLeod v. Lowe's Home Improvement*,

No. 09-CV-834 (NAM/DRH), 2010 WL 4366901, at *1 (N.D.N.Y. Oct. 28, 2010)

(mental health issues did not constitute good cause to grant a pro se plaintiff's

fifth request for an extension of time to oppose a motion to dismiss*); Morales v.*

*Mackenzie*, No. 17-CV-124, 2021 WL 1018614, at *2 (D. Vt. Mar. 17, 2021) (in the

context of discovery deadlines, good cause was not shown for an extension even

though the pro se plaintiff had been involuntarily committed and arrested; the

plaintiff's grandmother had died; and her brother was dealing with severe

illness).

(ECF 208, Order.)

**V.    Plaintiff's Opposition to the Motions To Dismiss**

Plaintiff filed a document on June 27, 2024, which I construe as an opposition to the motions to dismiss, even though she primarily appears to be seeking reconsideration of my order of June 20 (ECF 208). (*See* ECF 209, Pl.'s Opp.) On June 28, 2024, Plaintiff filed another document reiterating the arguments she made in her opposition to the motions to dismiss. (*See* ECF 210, Pl.'s Second Opp.)

In Plaintiff's filings at ECF 209 and ECF 210, Plaintiff relies on cases related to whether evidence outside of the pleadings should be considered on a motion to dismiss.[6] In this report and recommendation, I do not recommend that Your Honor rule based on any facts outside the pleadings, other ones that may appropriately be judicially noticed; nor do I suggest converting the motions to dismiss into motions for summary judgment. As a result, the cases cited by Plaintiff for the propositions that extrinsic evidence may not be considered on a motion to dismiss and that a pro se plaintiff must be given notice before a motion to dismiss is converted to one for summary judgment are inapposite. The other case cited by Plaintiff in ECF 209 and

---

[6]    *See Lucas v. Dep't of Corrections*, 66 F.3d 245 (9th Cir. 1995) (vacating a magistrate judge's dismissal of a case prior to filing and service of a complaint alleging that the incarcerated plaintiff had fallen in a poorly maintained drainage ditch because the magistrate judge had relied on the defendant's conditions report without providing the plaintiff an opportunity to respond); *Garaux v. Pulley*, 739 F.2d 437 (9th Cir. 1984) (holding that the court must notify a pro se plaintiff when it intends to convert a motion to dismiss into a motion for summary judgment because such notice prevents unfair surprises to pro se litigants and ensures that pro se litigants have a reasonable opportunity to present all relevant materials); *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986) (holding that the trial court was not required to advise the pro se plaintiff on how to oppose a summary judgment motion); *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa. 1964) (declining to consider a motion to dismiss on grounds requiring conversion to a summary judgment motion).

210 is not relevant because Plaintiff's state court eviction action is over (a fact of which the Court may take judicial notice).[7]

In both ECF 209 and ECF 210, Plaintiff accuses me of having had improper ex parte communications with Defendants. I have never received any ex parte communications from any Defendants other than the settlement position papers they appropriately submitted in accordance with my individual practices in connection with a settlement conference that ultimately did not take place; nor have I made any ex parte communications to any Defendants.

Plaintiff's filings at ECF 209 and 210 are not her only defense of the adequacy of her pleading in the AC. Plaintiff previously made a filing, her Reply Memorandum in Support of the Motion for Leave To Amend (ECF 107), arguing the sufficiency of her allegations in the AC. In that submission, she argued: that permitting New Defendants to remain in the case does not prejudice Original Defendants; that there are ties between New Defendants and Original Defendants; that Defendants concealed the true ownership of the building; that her landlord ignored hundreds of her requests for ADA and FHA reasonable accommodations and proposed repair schedules; that she did not deny contractors access to her apartment to perform needed repairs; that she adequately stated claims for ADA and civil rights violations, discrimination, retaliation, harassment, fraud, and emotional distress; that Defendants brought sham housing court cases against her; that Defendants made false complaints about her to government agencies; and that she was entitled to withhold rent due to housing code violations. (*See* ECF

---

[7]    *See Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189 (1935) (holding that a state judicial proceeding and a federal judicial proceeding could not continue in parallel when each proceeding might require the presiding court to order the same relief).

107, Reply Memo. in Supp. of Mot. for Leave To Amend at 6-9, 12-22.) Plaintiff directed the

Court's attention to several decisions that she argued compel a decision allowing her claims to

proceed. (*See id* at 23-24.) However, all the cited cases are either factually or legally inapposite

or both.

Indeed, Judge Abrams and Judge Wang have previously explained why some of those

cases are not relevant to this case. For example, Judge Abrams noted that Judge Wang had

"expressly addressed *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307 (E.D.N.Y. 2012),

finding it distinguishable because, among other things, it involved claims against a *public*

housing authority, brought by plaintiffs in federally funded housing." (ECF 96, Order at 6-7.)

*Shepherd v. Weldon Mediation Servs., Inc.*, 794 F. Supp. 2d 1173 (W.D. Wash. 2011), also

referenced by Plaintiff (*see* ECF 107, Reply Memo. in Supp. of Mot. for Leave To Amend at 23)

similarly involved public housing. The law governing public housing is different in several

important ways from the law governing private landlords.[8]

Judge Abrams went on to explain that *United States v. 111 East 88th Partners*, No. 16-

CV-9446 (PGG) (KHP), 2018 WL 4519203 (S.D.N.Y. Sept. 20, 2018), *United States v. 111 East*

*88th Partners*, No. 16-CV-9446 (JCF), 2017 WL 4217138 (S.D.N.Y. Sept. 19, 2017), and *Wetzel v.*

*Glen St. Andrew Living Community, LLC,* 901 F .3d 856 (7th Cir. 2018) are also inapposite:

> The two *111 East 88th Partners* decisions that Plaintiff attaches did not involve
>
> the Anti-Injunction Act or the type of injunctive relief that Plaintiff currently

---

[8]    *See generally* Andrew Scherer & Hon. Fern Fischer, Residential Landlord Tenant L. in N.Y.
§ 5:69 (2023-24 ed.) (discussing termination of tenancies administered by public housing
authorities.)

seeks. *See* 2018 WL 4519203, at *4 (granting a motion to compel discovery and

denying a cross-motion for a protective order precluding a deposition); 2017 WL

4217138, at * 1 (granting a motion to amend the complaint). And *Wetzel*

involved the narrow question of whether the FHA covered post-acquisition

discrimination in the context of a hostile housing environment claim, *see* 901

F.3d at 861-62, which is not relevant to this case. None of these decisions bear

upon the particular issues before the Court.

(ECF 96, Order at 7.) Moreover, the injunctive relief sought by Plaintiff – staying a housing court

proceeding that Defendants brought against her for non-payment of rent – has already been

denied by this Court (*see id.* at 2, 8) and is moot since Plaintiff has since been evicted from her

apartment.[9]

---

[9]    In November 2023, a final Judgment of Possession with Money was entered in favor of
Ray Realty LLC. *See Ray Realty LLC v. Noe*, No. LT-07780-18/NY (N.Y. Civ. Ct. New York Cty., filed
Apr. 27, 2022) (NYSCEF No. 88). This Court may take judicial notice of that decision in
connection with this motion to dismiss. *See, e.g., Pani*, 152 F.3d at 75 ("It is well established
that a district court may rely on matters of public record in deciding a motion to dismiss under
Rule 12(b)(6)."); *Global Network Comm's, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir
2006) ("A court may take judicial notice of a document filed in another court not for the truth
of the matters asserted in the other litigation, but rather to establish the fact of such litigation
and related filings."). New York City eviction data is made publicly available and searchable by
the Department of Investigation ("DOI"). *See NYC Marshals*, Dept. of Investigation
https://www.nyc.gov/site/doi/offices/cpr2.page ) (warrant of eviction executed at Plaintiff's
address). This data may be accessed by entering into the site's search field the relevant
address: 446 West 58th Street, Apt. 2R, New York, NY 10019. *See id.,* last visited July 16, 2024.
"When considering a motion made pursuant to Rule 12(b)(6), [the court] may take judicial
notice of documents from official government websites." *Rynasko v. New York Univ.*, 63 F.4th
186, 191 n.4 (2d Cir. 2023) (internal citation and quotation marks omitted).

Other cases cited by Plaintiff in support of the adequacy of her pleading in the AC, while involving landlord-tenant disputes, arose in completely different factual and procedural contexts and therefore are not relevant to Plaintiff's claims.[10] And the remaining cases she cites are even further removed factually from this matter.[11]

## VI.    Defendants' Replies in Further Support of Their Motions To Dismiss

Coffee Defendants and Original Defendants filed replies in further support of their motions to dismiss, respectively, on July 10 and 11, 2024. (*See* ECF 212, Coffee Defs.' Reply; ECF

---

[10]    *See, e.g., Super v. J. D'Amelia & Assocs., LLC*, No. 09-CV-0831 (SRU), 2010 WL 3926887 at *6-8 (D. Conn. Sept. 30, 2010) (holding that the plaintiff had stated a claim for disability discrimination based on the discontinuation of the plaintiff's Section 8 tenancy because of a criminal conviction); *Millenium Hills Hous. Dev. Fund Corp. v. Davis*, 32 Misc. 3d 1234(A), 936 N.Y.S.2d 59 (Table) (Dist. Ct. Suffolk Cnty. 2011) (dismissing a landlord's petition for eviction on the ground that the tenant's son had been convicted of a drug offense, because the son had been permanently excluded from the residence); *Davis v. New York City Hous. Auth.*, 30 Misc. 3d 1202(A), 958 N.Y.S.2d 645 (Table) (Sup. Ct. N.Y. Cnty. 2010) (annulling an administrative determination that culminated in the eviction of a tenant with significant mental health issues and remanding for appointment of a Guardian to assist the tenant in connection with the administrative process).

[11]    *See, e.g., Mitchum v. Foster*, 407 U.S. 225, 227 (1972) (holding that the district court had erred in ruling that it lacked power, in a case pursuant to 42 U.S.C. § 1983 alleging violations of the First and Fourteenth Amendments, to enjoin a state court action to close a bookstore based on Florida public nuisance law); *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 154 (2d Cir. 2010) (affirming a decision enjoining enforcement of a New York City rule that capped the maximum lease rate for taxicabs); *Lynch v. City of New York*, 589 F.3d 94, 105 (2d Cir. 2009) (affirming the reasonableness of a police department policy requiring immediate administration of breathalyzer test to any police officer who caused injury or death as a result of firing his or her gun); *Calhoun ex rel. Children's Rts. Initiative, Inc. v. Ilion Cent. Sch. Dist.*, 90 A.D.3d 1686, 1689 (4th Dep't 2011) (holding that a public school student with a learning disability could file suit against his school district for violating the ADA and the Rehabilitation Act even though the student had not exhausted related claims under the Individuals with Disabilities Education Act).

214, Original Defs.' Reply.)[12] Both of these sets of Defendants argue that Plaintiff did not

address the substance of their arguments in support of their motions to dismiss and reiterate

those arguments. (*See* ECF 212, Coffee Defs.' Reply; 214, Original Defs.' Reply.) Twerski

Defendants submitted their reply in further support of their motion to dismiss on July 12, 2024.

(*See* ECF 217, Twerski Defs.' Reply Aff.; ECF 218, Twerski Defs.' Reply Memo.)[13] Twerksi

Defendants argue, among other points, that (1) Plaintiff fails to address their arguments in

support of dismissal and that undefended claims must be dismissed; and (2) the Court may take

judicial notice of various facts demonstrating that the claims against Twerski Defendants should

be dismissed. (*See* ECF 218, Twerski Defs.' Reply Memo. at 3-10.)

**LEGAL STANDARDS FOR MOTIONS TO DISMISS**

A defendant may move to dismiss for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

---

[12]     ECF 213 appears to be a misfiled duplicate of ECF 214.

[13]     ECF 219 appears to be a duplicate of ECF 217.

liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (internal quotation marks and citation omitted).

In deciding a motion to dismiss, the Court "must accept as true all of the factual allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.at 679 (citation omitted).

**DISCUSSION**

I.    **Threshold Issues**

A.    <u>My Authority To Issue a Report and Recommendation</u>

Plaintiff points out that she has not consented to have this case referred to a magistrate judge for all purposes. She appears to be making the threshold argument that I am not authorized to issue a report and recommendation on the pending motions to dismiss, because magistrate judges are not permitted to issue reports and recommendations on dispositive motions absent the consent of all parties. As Judge Ronnie Abrams explained earlier in this case in response to a similar argument by Plaintiff: "[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court[.] 28 U.S.C. § 636(b)(l)(A)." (ECF 96, Order at 3-4.) When a matter is dispositive of a party's claims, "the magistrate judge

must file proposed findings and recommendations, which a district judge reviews either de novo or for clear error." *Farmer v. Fzoad.com Enters. Inc*., No. 17-CV-9300 (GBD) (OTW), 2019 WL 3948175, at *4 (S.D.N.Y. Aug. 21, 2019) (citing 28 U.S.C. § 636(b)(l)(A)-(C) and Fed. R. Civ. P. 72(b)(l)-(3)).

Judge Abrams went on to explain:

It is also worth noting that Plaintiff appears to be confusing the form that she filed on June 24, 2019, initially consenting to conduct all further proceedings before the magistrate judge under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, *see* Dkt. 67, with the Court's authority to refer a case to a magistrate judge for specific purposes such as a report and recommendation, under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72.

(ECF 96, Order at 5.) Accordingly, I have the authority to make this Report and Recommendation to Your Honor regarding the suggested disposition of Defendants' motions to dismiss the AC.

B.      Defendants Are Permitted To Move To Dismiss the Operative Complaint

Plaintiff takes the position that, because "Defendants" answered the original Complaint, they are not permitted to move to dismiss the AC. (*See* ECF 153, Opp. to Making ECF 114 the Operative Compl. at 3.) Plaintiff is correct that Original Defendants answered the Complaint. (*See* ECF 34, Original Defs.' Answer.) Coffee Defendants, Twerski Defendants, and Gregor did not file an answer. However, as to Original Defendants, Plaintiff asked to amend the Complaint (*see* ECF 56, Mot. for Leave To Amend) and filed ECF 91 and later ECF 95 as her proposed

amended complaint. Original Defendants opposed the request. (*See* ECF 59, Original Defs.'
Memo. of Law in Opp. to Mot. for Leave To Amend; ECF 100, Original Defs.' Memo. of Law in
Opp. to Mot. for Leave To Amend.) Plaintiff filed ECF 107 in further support of her request to
amend. I ultimately granted that request and ordered that ECF 95 is the AC. (*See* ECF 162,
Order.)

Original Defendants, Coffee Defendants, Twerski Defendants, and Gregor are entitled to
ask the Court to dismiss the AC notwithstanding that Original Defendants answered the
Complaint. As this Court has explained:

In general, the amended complaint is the "legally effective pleading for Rule
12(b)(6) purposes." *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999).
"It is well established that an amended complaint ordinarily supersedes the
original and renders it of no legal effect." *International Controls Corp. v. Vesco*,
556 F.2d 665, 668 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978); *see also,
e.g.*, *Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227 (SJS) (LMF), 2009 WL
399728, at *3 (S.D.N.Y. Feb. 17, 2009) (treating defendants' motion to dismiss
the amended complaint as a motion pursuant to Fed. R. Civ. P. 12(b)(6) after
defendants had answered the original complaint). As Defendants have yet to
answer the Amended Complaint, Defendants have not waived their right to
move to dismiss. *Cf. Moore v. Shahine*, No. 18-CV-463 (AT) (KNF), 2019 WL
948349, at *2 (S.D.N.Y. Feb. 27, 2019) (finding defendant's motion to dismiss

untimely after the defendant had answered the plaintiff's second amended

complaint).

*Bao Guo Zhang v. Shun Lee Palace Rest., Inc.,* No. 17-CV-0840 (VSB), 2021 WL 634717, at *5

(S.D.N.Y. Feb. 16, 2021). Put another way, answering an original complaint does not waive a

defendant's right to move to dismiss an amended complaint, except with respect to objections

that go to the defendant's "'willingness to submit a dispute to judicial resolution,'" such as

objections to personal jurisdiction, venue, insufficiency of process, and insufficiency of service

of process. *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)). The

pending motions to dismiss the AC do not go to any Defendant's willingness to submit this

dispute to judicial resolution, and so Original Defendants, Coffee Defendants, Twerski

Defendants, and Gregor are not precluded from making motions to dismiss the AC.

## II.   Analysis of Plaintiff's Claims

### A.   All of Plaintiff's Claims Against New Defendants Should Be Dismissed[14]

Plaintiff alleges that Defendants have "engage[d] in a fraudulent nefarious unlawful

ownership operating scheme" whereby they concealed their true identities using "a series of

---

[14]   This recommendation applies both to the New Defendants who have appeared (Coffee Defendants, Twerski Defendants, and Gregor) and those who have not appeared (the Non-Appearing Defendants). Original Defendants, Coffee Defendants, Twerski Defendants, and Gregor have filed motions to dismiss. The arguments made in support of those motions to dismiss apply equally to the Non-Appearing Defendants. I provided Plaintiff with notice that, to promote efficiency, I intended to include the Non-Appearing Defendants in my report and recommendation on the motions to dismiss and directed her to include in her opposition papers any arguments as to why the claims against the Non-Appearing Defendants should not be dismissed. I cautioned her that her failure to do so might result in my recommending that the Court dismiss the claims against the Non-Appearing Defendants on its own motion and to view such a motion as unopposed. (*See* ECF 205, Order at 1-2.) Plaintiff's opposition to the

unlawful shell companies." (ECF 95, AC ¶ 12.) Plaintiff further alleges that New Defendants sold

the apartment building to an unspecified buyer in the expectation of making millions. (*See id.* ¶

50.) She also attaches numerous exhibits to the AC that she says demonstrate New Defendants'

ownership interest in her apartment building. (*See, e.g.,* ECF 95-2, AC Ex. A.) But those

documents do not show that New Defendants owned her building. At most they show that

some New Defendants had relationships with attorneys who also represented Original

Defendants at various times (*see, e.g.*, *id.* at 19 (showing that Defendant True Coffee has the

same address for service of process purposes as Defendant Gregor); (*see id.* at 30) (showing

that Defendant Gregor was the attorney for Defendants Ray Realty and Zavisa Zecevic in a

housing court case brought by Plaintiff)); that one of Ray Realty's agents, Zavisa Zecevic, had an

address at 41-25 44th Street in Queens, a building that may be owned by Defendant 41-25 44th

Street Owners Corp., as the address for receiving service (*see* ECF 200-4, Twerski Defs.' Memo.

at 12); and that a third-party website search result (*see* ECF 95-2, AC at 38-39) from a website

---

motions to dismiss does not address the claims against the Non-Appearing Defendants. Under
the circumstances, I recommend that Your Honor dismiss the claims against the Non-Appearing
Defendants for the same reasons that pertain to the other New Defendants (Coffee
Defendants, Twerski Defendants, and Gregor). *See, e.g., Milton v. Ocwen Mortg. Servicing, Inc.*,
No. 16-CV-3837 (MKB) (JO), 2017 WL 2992489, at *4 (E.D.N.Y. July 14, 2017) (dismissing claims
against non-appearing defendants on the same grounds applicable to defendants that
appeared); *Vondette v. McDonald*, No. 00-CV-6874, 2001 WL 1551152, at *1 n. 2 (S.D.N.Y. Dec.
5, 2001) ("Although defendant Park has not joined in the other defendants' motions, this Court
will nonetheless enter judgment dismissing the action as to all defendants, on its own
motion."); *Raitport v. Chemical Bank*, 74 F.R.D. 128, 134 (S.D.N.Y. 1977) ("No conceivable
purpose can be served by awaiting the receipt of motion papers from the less diligent
counsel."); *see also Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d
Cir. 2011) (noting that "[b]oth the Supreme Court and the Second Circuit have long held that
courts may dismiss actions on their own motion in a broad range of circumstances where they
are not explicitly authorized to do so by statute or rule").

called "Who owns what in nyc?" listed 41-25 44th Street in Queens on the same page as the address where Plaintiff resided. (*See* ECF 200-4, Twerski Defs.' Memo. at 12.)

Plaintiff's allegations about New Defendants, which do not connect any New Defendant with the discriminatory conduct she alleges, are insufficient to support any of her claims against them. Plaintiff also has not alleged facts connecting any of the individual Original Defendants to the complained-of conduct described in the AC, even though she would know which Defendants did what. Accordingly, her claims should be dismissed as against New Defendants and Defendants Zavisa Zecevic, John Militec, Julia Zecevic, and Dejan Zecevic. *See Wiltz v. New York Univ.*, No. 19-CV-3406 (GHW) (SDA), 2019 WL 8437456, at *14 (S.D.N.Y. Dec. 23, 2019) (recommending dismissal of FHA retaliation claims because the plaintiff failed to allege sufficient facts connecting the individual defendants to the complained-of conduct), *report and recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020); *Burris v. Hous. & Servs. Inc.,* No. 17-CV-9289 (JGK), 2019 WL 1244494, at *5 (same) (S.D.N.Y. Mar. 18, 2019).

      B.      <u>Plaintiff's Claims Under the ADA and the Rehabilitation Act Should Be Dismissed</u>

Plaintiff alleges that Defendants discriminated against her due to her disability in violation of the ADA and the Rehabilitation Act. (*See* ECF 95, AC ¶¶ 11, 56.) Plaintiff's claims pursuant to the ADA fail because Defendants in this case are private landlords. As Judge Abrams explained with regard to Plaintiff's ADA claims when adopting Judge Wang's Report and Recommendation that she deny Plaintiff's request for preliminary injunctive relief:

    While Plaintiff may also purport to assert discrimination and/or retaliation claims under the Americans with Disabilities Act ("ADA"), any such claim would fail as

Plaintiff brings this action against her private landlords. *See, e.g., Stevens v. Ashley Mgmt. LLC,* No. 15-CV-462S, 2016 WL 632005, at *3 (W.D.N.Y. Feb. 17, 2016) (holding that plaintiff's ADA claim fails under both Title II and Title III because defendants did not qualify as "public entities" under Title II and plaintiff's apartment did not constitute a "place of public accommodation" under Title III); *Ayyad-Ramallo v. Marine Terrace Assocs. LLC*, No. 13-CV-7038 (PKC), 2014 WL 2993448, at *5 (E.D.N.Y. July 2, 2014) ("[T]he ADA does not apply to private landlords, even if the premises are used for publicly subsidized housing.") (citation omitted).

(ECF 96, Order at 1 n.1.) Accordingly, Plaintiff's ADA claims should be dismissed.

Plaintiff's claims under the Rehabilitation Act should also be dismissed because the Rehabilitation Act applies only to federally funded programs*. See Bryant v. N.Y. Educ. Dep't,* 692 F.3d 202, 216 (2d Cir. 2012). Plaintiff has not alleged that any Defendant received any federal funding.

C.  Plaintiff's FHA Claims Should Be Dismissed

      1.  Plaintiff's FHA Reasonable Accommodation Claims
         Against Defendant Ray Realty Should Be Dismissed

Plaintiff alleges that Defendants ignored her "hundreds" of written requests" for "reasonable accommodations in how mold, painting, floor and other repairs are effectuated." (ECF 95, AC ¶¶ 13, 27-28, 33.)

      *a.  Legal Framework*

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any . . . renter because of a handicap." 42 U.S.C. § 3604(f)(1). The FHA defines "discrimination" to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). The Second Circuit has explained that this subsection does not "require[ ] that the denial of modifications or accommodations be the result of a discriminatory animus toward the disabled." *Austin v. Town of Farmington*, 826 F.3d 622, 627 (2d Cir. 2016). A plaintiff need only show "that the requested modification or accommodation [is] reasonable and that the denial(s) result . . . in so diminishing that person's use and enjoyment of the premises as to constitute a denial of equal opportunity." *Id.*

To plead a claim based on denial of a reasonable accommodation, a plaintiff with a disability must allege that: "(1) she is disabled within the meaning of the FHA, (2) the defendant knew or should have known of this fact, (3) an accommodation may be necessary to afford her

an equal opportunity to use and enjoy the dwelling; (4) such accommodation is reasonable; and (5) the defendant refused to make the requested accommodation." *Tuman v. VL GEM LLC*, No. 15-CV-7801 (NSR), 2017 WL 781486, at *5 (S.D.N.Y. Feb. 27, 2017).

Accommodations under the FHA must be "reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling." *Hubbard v. Samson Mgmt. Corp.,* 994 F. Supp. 187, 190 (S.D.N.Y. 1998) (internal citations omitted). A landlord is required to make a reasonable accommodation if it would not impose an undue hardship or burden. *See Austin*, 826 F.3d at 630 ("A requested accommodation is reasonable where the cost is modest and it does not pose an undue hardship or substantial burden . . . ."); *Tsombanidis v. West Haven Fire Dep't, et al.*, 352 F.3d 565, 578 (2d Cir. 2003) ("A defendant must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden.").

### b. Analysis

There appears to be no dispute that Plaintiff has pleaded the first three elements of the claim. As to the fourth element (the reasonableness of the requested accommodation), it is unclear that that Plaintiff's requested accommodation of specifying "how mold, painting, floor and other repairs are effectuated" – is "reasonable and necessary." Plaintiff indicates that, to avoid aggravating her respiratory problems, in making the repairs, there must be: no chemical use, no pesticide use, no sealers, no detergents, no bleaches, no biocides, no plasters, no toxic paints and no sawdust. (*See* ECF 95, AC ¶ 33.) She also specifies that there must be isolation

tents and airlocks and that mold abatement should be done on one room every two weeks. (*See id.*)

Courts analyze whether an accommodation was required by balancing benefits to the plaintiff and burdens on the defendant. *See Hubbard,* 994 F. Supp. at 190*.* Courts will find an accommodation reasonable "when it imposes no undue financial or administrative hardships on the defendant . . . ." *Id.* (internal citations omitted). Whether a requested accommodation is required under the Act is "highly fact-specific, requiring case-by-case determination," and therefore is not readily susceptible to determination on a motion to dismiss. *Id.* (internal quotation marks and citations omitted).

Whether performing the repairs in the manner demanded by Plaintiff would impose a significant financial hardship on the landlord is also a question that may not be appropriate for adjudication on a motion to dismiss. *See, e.g., Staron v. McDonald's Corp.,* 51 F.3d 353, 356 (2d Cir. 1995) (reversing Rule 12(b)(6) dismissal because the court needed to perform a fact-based inquiry into the "nature of the disability in question and the cost to the organization that would implement" the accommodation).

Original Defendants dispute the fifth prong (whether they denied the requested accommodation), arguing that Plaintiff denied the contractors access to the apartment. (*See* ECF 174, Original Defs.' Memo. at 8.) The problem with their position is two-fold. First, Plaintiff alleges that she did provide access to her apartment (*see* ECF 95, AC ¶ 53(BB)), and that allegation must be accepted as true for purposes of this motion to dismiss. *See Austin*, 826 F.3d at 625.

Second, Plaintiff's allegation is not simply that the landlord refused to make repairs, but rather that it refused to make repairs in the manner required to accommodate her respiratory disability. (*See* ECF 95, AC ¶ 33.) While a landlord "does not have to provide a disabled individual with every accommodation [s]he requests or the accommodation of h[er] choice," *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012), at this stage in the litigation it is not possible to assess whether the requested accommodations for Plaintiff's disability were reasonable. *See Staron,* 51 F.3d at 356.

I therefore would recommend that the claim for FHA failure to accommodate be allowed to proceed against Plaintiff's landlord, Ray Realty, except for the fact that Plaintiff no longer lives in the apartment.  *See supra* note 8.

Notably, "[t]he Second Circuit appears to differentiate between 'intentional' and 'non-intentional' discrimination claims under the FHA, treating a reasonable accommodation as 'non-intentional.'" *Jones v. Volunteers of Am. Greater New York*, No. 20-CV-5581 (MKV), 2022 WL 768681, at *9 (S.D.N.Y. Mar. 14, 2022) (quoting *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18-19 (2d Cir. 2015)), and "[n]on-intentional discrimination claims provide only for 'injunctive relief,' not money damages." *Jones*, 2022 WL 768681, at *9 (quoting *Forziano*, 613 F. App'x at 18-19)). Because Plaintiff has moved from the apartment, relief would be unavailable to her on this claim. *See Wiltz*, 2019 WL 8437456, at *16 (finding that the plaintiff lacked standing to pursue injunctive relief since he no longer lived in the building).

2.    Plaintiff's FHA Discrimination Claims Should Be Dismissed

Plaintiff alleges that Defendants discriminated against her because of her disability by: (1) filing five illegal housing court eviction actions, beginning in December of 2016, and preventing her from defending herself and bringing counterclaims in those cases; (2) filing complaints with regulatory agencies regarding repairs to her apartment; (3) conspiring with a housing court judge to convince APS that she should be under its supervision, including by placing garbage outside her door to make it seem as though she created problems within the apartment building and encouraging other tenants to lodge complaints that she was a danger to herself and others; (4) refusing to grant her a DRIE in 2018 and 2019; (5) refusing to provide and sign renewal leases in 2018 and 2019; (6) vandalizing the door of her apartment; (7) arranging for people to ring her doorbell multiple times a day at all hours of the day and night; and (8) arranging for her to receive thousands of robocalls and spam emails. (*See* ECF 95, AC ¶¶ 15-16, 26, 29, 31, 37, 39-40, 53.) She also alleges that Defendants (without specifying who) said, "I will not let you have DRIE, I do not want a disabled tenant in my building." (*Id.* ¶ 29.)

a.    *Legal Framework*

The FHA "broadly prohibits discrimination in housing . . . ." *Mitchell v. City of New York*, No. 19-CV-02785 (CM), 2019 WL 2725615, at *3 (S.D.N.Y. July 1, 2019) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979) (internal quotation marks omitted)). Under the FHA, it is unlawful, among other things, "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," on the basis of handicap, among other protected categories. 42

29

U.S.C. §§ 3604 (a), (b), (f)(1)-(2). To avoid dismissal of an FHA discrimination claim, in addition to pleading the elements of a prima facie claim, the plaintiff must allege "that animus against the protected group was a significant factor" in motivating the defendant's actions. *Khodeir v. Sayyed*, No. 15-CV-8763 (DAB), 2016 WL 5817003, at *5 (S.D.N.Y. Sept. 28, 2016). "The allegations in the complaint 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.*at *6 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

> b.  Analysis

I address the alleged acts of discrimination below.

*Filing eviction actions and preventing Plaintiff from defending herself; refusing to renew her lease; filing complaints with regulatory agencies*. Plaintiff alleges that Defendants discriminated against her based on her disability by trying to evict her, refusing to renew her lease, and filing complaints about her with regulatory agencies. (*See* ECF 95, AC ¶¶ 13-16, 26, 29, 31-32.) However, Plaintiff fails to allege the required minimal inference of discriminatory motivation for those actions.

Plaintiff admits that she had been withholding rent payments because of all the outstanding repairs. (*See* ECF 71, Report and Recommendation at 7-8, *adopted by* ECF 96, Order; ECF 107-4, Plaintiff's Response to Original Defendants' Opposition to Her Motion To Amend the Original Complaint at 21.) She also concedes that she insisted on repairs being performed in a very specific manner, including no pesticides, sealers, detergents, bleaches, biocides, toxic chemicals of any kind; installing isolation tents and air locks; and working on one

room at a time every two weeks. (*See* ECF 95, AC ¶ 33.) Yet she does not allege that Defendants

treated her differently from any other tenant who had been withholding rent or insisted on a

particular plan for making repairs. As a result, Plaintiff has not plausibly pleaded a

discriminatory motivation for the eviction proceedings, the complaints to regulatory agencies,

or the refusal to provide her with renewal leases in 2018 and 2019. *See, e.g., Wiltz*, 2019 WL

8437456, at *14 (dismissing FHA discrimination claim where the plaintiff provided no factual

allegations supporting his claim that his landlord imposed different standards for other

residents and failed to identify tenants outside his protected class who received a lease renewal

under similar circumstances); *Harris v. Dep't of Hous. Pres. & Dev.,* No. 08-CV-01886 (ENV),

2011 WL 13299800, at *3 (E.D.N.Y. Apr. 5, 2011) ("[C]laims supported only by conclusory

statements that defendants discriminated against the plaintiff on account of a protected status

do not state a plausible cause of action under the FHA."); *Lawtone-Bowles v. New York City*

*Hous. Auth.*, No. 13-CV-01434 (GBD) (JCF), 2014 WL 705272, at *2 (S.D.N.Y. Feb. 20, 2014)

(dismissing FHA claim for failure to provide factual allegations raising inference of

discriminatory treatment where "bald assertions of discrimination" were unsupported by

examples of similarly situated individuals being treated differently).

I therefore recommend that Plaintiff's FHA discrimination claim predicated on the

eviction proceedings, refusal to renew her lease in 2018 and 2019, and reports about her to

regulatory agencies be dismissed.

*Refusing to grant a DRIE*. Plaintiff alleges that Defendants discriminated against her due

to her disability by interfering with her ability to obtain a DRIE in 2018 and 2019. (*See* ECF 95,

31

AC ¶ 14.) Plaintiff fails to allege even the minimal inference of discriminatory motivation in connection with her inability to obtain a DRIE in those years.

Plaintiff alleges that in 2018 and 2019, "defendant owners refuse to allow for DRIE which is a freeze on rent provided to disabled plaintiff and paid for by NYC a difference of approx[imately] $20 per month." (*Id.*) She goes on to say that Defendants (without specifying who or when) told her, "I will not let you have DRIE. I do not want a disabled tenant in my bldg." (*Id.* ¶ 29.) Plaintiff claims she was told by "Drie" that she was "eligible to receive DRIE" but that "they" could not provide "this to [her] until the landlord signs both the 2018 and 2019 renewal leases." (*Id.*) However, she also alleges that she sought a DRIE in 2016 and 2017, without suggesting that the landlord interfered with her efforts to secure a DRIE for those years, even though she was disabled at the time and the landlord was aware of her disability (*see id.* ¶ 24). Additionally, Plaintiff maintains that it was Defendants' refusal to provide her with renewal leases in 2018 and 2019 that made her ineligible for a DRIE in those years. But as set forth above, Plaintiff has not adequately alleged that Defendants refused to renew her lease under circumstances suggesting Defendants were motivated by discriminatory animus. As a result, Plaintiff has not adequately alleged that Defendants acted with discriminatory animus when they frustrated her efforts to get a DRIE.

I therefore recommend that Plaintiff's FHA discrimination claim based on Defendants' alleged interference with her ability to obtain a DRIE in 2018 and 2019 be dismissed.

*Conspiring with a housing court judge to instigate an APS investigation*. Plaintiff alleges that Defendants discriminated against her based on her disability by conspiring with a housing

court judge to cause APS to investigate her. (*See id.* ¶¶ 14, 26, 29.) But Plaintiff fails plausibly to allege that Defendants engaged in a conspiracy to instigate an APS investigation of her.

Plaintiff alleges that in January of 2017, Defendants "acted in concert behind the scenes with the court judges" and that "the court on its own [w]ithout any motion nor due process, nor plaintiff having yet the opportunity to [f]ile her written Answer, the morally compromised court then whips out an APS Order referring plaintiff to protective services." (*Id.* ¶ 53(O); *see also id.* ¶ 15 (stating that Defendants "orchestrated the attacks against tenant by devising a scheme that all of a sudden a 30 y[ea]r tenant with 15 y[ea]r lease all of a sudden was a danger to herself and society so they can orchestrate in concert with housing court judges and their lawyers APS referral in 2017 and continu[ing] into 2019"). Plaintiff also alleges that Defendants put garbage outside her door and tried to convince other tenants to write disparaging letters about her to paint her as a danger to herself and others. (*See id.*)

However, Plaintiff provides no factual support for her conclusory allegations that Defendants conspired with a housing court judge to refer her to APS, planted garbage outside her door, or encouraged other tenants to complain that she was dangerous. These claims seem implausible, but it is the "conclusory nature" of the allegations, "rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Accordingly, the alleged conspiracy cannot serve as a predicate for Plaintiff's FHA discrimination claim, and so I recommend that the claim be dismissed insofar as it is based on any such conspiracy.

*Vandalizing the door of her apartment; leaving garbage outside her apartment; arranging for people to ring her doorbell; causing robocalls and spam emails*. Similarly, Plaintiff makes bald allegations that Defendants discriminated against her based on her disability by harassing her. However, as with her claims that Defendants conspired with a housing court judge to instigate an APS investigation into her, her claims that Defendants were responsible for placing garbage outside on her doorstep, vandalizing her front door, ringing her doorbell at all hours of the day and night, and causing her to receive thousands of robocalls and spam emails from India and Russia (ECF 95, AC ¶¶ 15, 37, 53) are unsupported by any concrete factual allegations.

The assertions that Defendants placed garbage on her doorstep, vandalized her front door, and caused her to receive robocalls and spam emails are wholly conclusory. Plaintiff provides a bit more information about the doorbell ringing, alleging that "associates working for the owners" from the building next door and people entering and leaving apartments 1R and 4R were responsible for ringing her doorbell at all hours of the day and night. (*Id.* ¶ 15.) However, she does not explain her basis for believing that the people ringing her doorbell were working for the building owner, or how the building owner was responsible for people going to and from apartments 1R and 4R. The FHA claim based on these events therefore lacks the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a situation "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,"

and so "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

I therefore recommend that Plaintiff's FHA discrimination claim based on these alleged acts of harassment be dismissed.

***

While Plaintiff has not adequately pleaded a claim for FHA discrimination, it is conceivable (although perhaps not likely) that she could do so if allowed to replead. Therefore, I recommend dismissing this claim without prejudice to Plaintiff's filing a second amended complaint advancing such a claim.

### 3.  Plaintiff's FHA Retaliation Claims Should Be Dismissed

Plaintiff alleges that Defendants retaliated against her for complaining to the New York City Department of Housing Preservation and Development in November of 2016 about housing code violations and for requesting reasonable accommodations in connection with the repairs by engaging in the same behaviors that are the subject of her FHA discrimination claim.

#### a.  Legal Framework

The FHA makes it unlawful to retaliate by "coerc[ing], intimidate[ing], threaten[ing], or interfere[ing] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section . . . 3604[.]" 42 U.S.C. § 3617. To plead a retaliation claim under the FHA, a plaintiff must allege that: "(1) the plaintiff engaged in protected activity, (2) the defendant was aware of this activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the

35

protected activity and the adverse action." *Ponce v. 480 E. 21st St., LLC,* No. 12-CV-4828 (ILG) (JMA), 2013 WL 4543622, at *3 (E.D.N.Y. Aug. 28, 2013); *see also Mazzocchi v. Windsor Owners Corp.,* No. 11-CV-7913 (AT) 2013 WL 5295089, at *12 (S.D.N.Y. Sept. 17, 2013). The plaintiff must also allege that the defendants' actions "arose from a discriminatory motive." *Haber v. ASN 50th St. LLC,* 847 F. Supp. 2d 578, 586 (S.D.N.Y. 2012).

> b. *Analysis*

Plaintiff has adequately alleged that she engaged in protected activity beginning in November of 2016 by requesting reasonable accommodations in connection with necessary repairs. *See Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595 (KMK), 2015 WL 685194, at *12 (S.D.N.Y. Feb. 17, 2015) (noting that "[a] request for a reasonable accommodation is [a] protected activity under the FHA") (internal quotation marks and citation omitted). I address the alleged acts of retaliation below.

*Filing eviction actions and preventing Plaintiff from defending herself; refusing to renew her lease; filing complaints with regulatory agencies*. While eviction proceedings can sometimes be adverse events that underpin FHA retaliation claims, *see Byrd v. Grove St. Mgmt. Corp.*, No. 16-CV-06017 (MAT), 2018 WL 3110219, at *3 (W.D.N.Y. June 25, 2018), Plaintiff here does not adequately allege that Defendants had a discriminatory motive when they brought eviction proceedings.[15] The same is true of her allegations based on Defendants' complaints about her

---

[15]    To the extent she is complaining about decisions made by the housing court, Defendants cannot be held responsible, and her remedy is to appeal in state court. *See Wiltz,* 2019 WL 8437456, at *13 ("Any injury stemming from NYU's motion to strike was caused by the state court's decision granting that motion and not the motion itself.").

to regulatory agencies and their refusal to provide her with renewal leases in 2018 or 2019. As explained above, the AC contains no factual allegations that Plaintiff's landlord imposed different standards for different tenants for starting eviction proceedings, renewing leases, and making complaints to regulatory agencies. *See supra* Part II(C)(2)(b). As a result, Plaintiff has not adequately pleaded a claim for FHA retaliation based on the eviction proceedings, the complaints to regulatory agencies, or the refusal to provide her with renewal leases in 2018 and 2019. Accordingly, her FHA retaliation claim based on these alleged retaliatory acts should be dismissed. *See, e.g., Wiltz*, 2019 WL 8437456, at *14; *Harris,* 2011 WL 13299800, at *3; *Lawtone-Bowles*, 2014 WL 705272, at *2 (S.D.N.Y. Feb. 20, 2014).

 *Refusing to grant a DRIE*. As noted above, *see supra* Part II(C)(2)(b), Plaintiff alleges that in 2018 and 2019, Defendants interfered with her ability to obtain a DRIE by refusing to renew her leases for those years. (*See* ECF 95, AC ¶ 14.) However, she also alleges that she sought a DRIE in 2016 and 2017, yet she does not suggest that the landlord interfered with her efforts to secure a rent freeze in those years (*see id.* ¶ 24), even though the 2017 DRIE application would have post-dated her protected activity in 2016. A qualified tenant may apply for a DRIE at "any time" by submitting a completed application to the Department of Finance. *See* 19 RCNY § 52-02(1) (codifying the application process for DRIE applicants). An application must contain proof that the applicant has the "right to reside in such apartment." *Id.* § 52-02(1)(iii) A fully executed lease is not the only documentation sufficient to establish the tenant's right to reside in the apartment. *See id.* ("An initial application . . . will not be approved by the Department if the tenant, tenant representative, or agent does not provide a lease *or other* documentation which

proves that the tenant has the right to reside in such apartment . . . .") (emphasis added). Once approved, the tenant's renewal applications "must be filed no later than six months after the expiration or a rent increase exemption order," *id.* § 52-02(3)(c), unless such tenant remains income eligible and has been approved for "five consecutive benefit periods." *Id.* § 52-02(3)(b). The AC contains no allegations that Defendants had different standards in connection with granting renewal leases or permitting DRIEs for tenants who did and did not engage in disability-related protected activity. Therefore, Plaintiff has not adequately alleged that Defendants had a discriminatory motive when they interfered with her DRIE application, and so that alleged interference cannot serve as a predicate for her FHA retaliation claim, which should be dismissed to the extent it is based on her 2018 and 2019 DRIE applications.

*Instigating an APS investigation; vandalizing the door of Plaintiff's apartment; planting garbage outside her door; arranging for people to ring her doorbell; causing her to receive robocalls and spam emails*. Plaintiff alleges that she suffered these upsetting occurrences, but, as discussed above, *see supra* Part II(C)(2)(b), she does not adequately allege that Defendants were responsible for those events. As such, she has not adequately alleged adverse actions for purposes of pleading a claim for FHA retaliation. *See Wiltz*, 2019 WL 8437456, at *13 (finding that the plaintiff had not adequately alleged an adverse action, because "[a]ny injury stemming from NYU's motion to strike was caused by the state court's decision granting that motion and not the motion itself").

Even if Plaintiff had sufficiently alleged that Defendants were responsible for these events, they cannot be the predicates for her FHA retaliation claim because she has not

adequately alleged that those events were material to her. *See Marks v. Bldg. Mgmt. Co., Inc.*, No. 99-CV-5733 (THK), 2002 WL 764473, at *12 (S.D.N.Y. Apr. 26, 2002) (explaining that FHA retaliation claims require an adverse action "of sufficient magnitude to permit a finding of intimidation, coercion, threats or interference" (quoting *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 252 (D.N.J. 2001) (internal quotation marks omitted)). Nor has Plaintiff alleged that those events actually chilled her in her exercise of rights under the FHA. *See id.* at *13-14 (noting that a plaintiff's claim for retaliation must fail absent a showing that the alleged violation had any actual effect on him).

For the reasons set out above, I recommend that Plaintiff's FHA retaliation claim based on those events be dismissed.

***

I do not believe that Plaintiff has adequately pleaded a claim for FHA retaliation. However, as with her FHA discrimination claim, it is conceivable that she could do so if allowed to replead. Therefore, I recommend dismissing this claim without prejudice to Plaintiff's filing a second amended complaint advancing such a claim.

D.    Plaintiff's Claims for Constitutional Violations Should Be Dismissed

Plaintiff claims that Defendants are liable for a variety of constitutional violations under 42 U.S.C. § 1983 as a result of Defendants' alleged conspiracy with housing court judges presiding over eviction proceedings against her. (*See* ECF 95, AC ¶ 53(O).) These claims fail because Plaintiff has not alleged and cannot allege that any Defendant is a state actor. As Judge

Abrams explained when adopting Judge Wang's Report and Recommendation that she deny Plaintiff's request for preliminary injunctive relief:

> Plaintiff has failed to state a plausible claim for relief under Section 1983 because Defendants are not state actors and she has not asserted that they "acted under color of state law," as the Report rightly recognized. *See id*. at 6; *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) ("[To state a claim under Section 1983,] a plaintiff must allege that . . . the defendant was a state actor, *i.e.,* acting under color of state law, when he committed the violation."); *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) ("The actions of a private citizen . . . may constitute state action only when 'there is such a close nexus between the State and the challenged action that . . . private behavior may be fairly treated as that of the State itself.'") (quoting *Abdullahi v. Pfizer, Inc*., 562 F.3d 163, 188 (2d Cir. 2009)).

(ECF 96, Order at 6.)

### E.    Plaintiff's Claim for Fraud Should Be Dismissed

Plaintiff alleges that Defendants committed fraud by telling other tenants that she had complained about them to convince them to lodge complaints that she was a danger to herself and others. (*See* ECF 95, AC ¶ 53(EE)-(GG).)

To state a claim for fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to

the plaintiff." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *7

(S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir.

1997)).

Plaintiff's fraud claim fails because she has not alleged and cannot allege that she relied

on Defendants' statements. All the statements about which Plaintiffs complains were made to

other individuals, not to Plaintiff. And she did not act or refrain from acting based on those

statements. She may not bring a fraud claim for statements to others relied upon by others to

her detriment – to state a claim for fraud, she would need to plead that she herself suffered

injury by relying on the allegedly false statements. *See BAT LLC v. TD Bank, N.A.*, No. 15-CV-

5839 (RRM) (CLP), 2018 WL 4922736, at *11 (E.D.N.Y. July 31, 2018), *report and*

*recommendation adopted*, 2018 WL 4693644 (E.D.N.Y. Sept. 28, 2018).

      F.      <u>Plaintiff's Intentional Infliction of Emotional Distress Claim Should Be Dismissed</u>

Plaintiff's pleads a claim of intentional infliction of emotional distress under New York

law based on the following alleged acts by Defendants: efforts to evict her, baseless complaints

about her with regulatory agencies, attempts to convince APS that she was a danger to herself

and others, refusal to consider her reasonable accommodation requests, planting garbage

outside her apartment, vandalizing the door of her apartment, ringing her doorbell multiple

times a day at all hours of the day and night, and arranging for her to receive thousands of

robocalls and spam emails. (*See* ECF 95, AC ¶¶ 15-16, 26, 29, 31, 37, 39-40, 53.)

Under New York law, to state a claim for intentional infliction of emotion distress, a

plaintiff must allege: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless

disregard of a substantial probability of causing, severe emotional distress; (3) a causal

connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v.*

*AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (internal citation omitted). The conduct must be

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v.*

*Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d

115, 122 (1993)). This standard is "rigorous, and difficult to satisfy." *Howell*, 81 N.Y.2d at 122.

(internal quotation marks and citation omitted). A court may determine, as a matter of law,

that the alleged behavior is not sufficiently outrageous to warrant the imposition of

liability. *Id.* at 121. Additionally, as Original Defendants correctly note (*see* ECF 174, Original

Defs.' Memo. at 11), "New York courts have held that a claim for damages for intentional

infliction of emotional distress is subject to the one-year statute of limitations in C.P.L.R.

Section 215(3)." *Patterson v. Balsamico,* 440 F.3d 104, 112 n. 4 (2d Cir. 2006).

To begin with, Plaintiff does not identify the dates of all the events she alleges to

support her intentional infliction of emotional distress claim, but some of these events took

place before February 14, 2018 and therefore fall outside the one-year limitations period.

Plaintiff cannot pursue her intentional infliction of emotional distress claim to the extent it is

based on events preceding February 14, 2018, including efforts to evict her, baseless

complaints to regulatory agencies about her, attempts to convince APS to investigate her,

refusals to renew her lease, interference with her efforts to obtain a DRIE, ignoring her requests

for reasonable accommodations, and vandalizing the door of her apartment, ringing her

doorbell multiple times a day at all hours of the day and night, and arranging for her to receive thousands of robocalls and spam emails, to the extent those events took place before that date.

Moreover, Plaintiff's claims that Defendants tried to evict her, made baseless complaints about her to regulatory agencies, and tried to convince APS to investigate her (ECF 95, ¶¶ AC 13, 15, 53) do not clear the high bar for egregious conduct. *See Stella v. County of Nassau*, 896 N.Y.S.2d 357, 358 (1st Dep't 2010) (allegation that "defendants illegally evicted [plaintiffs] from the premises, ransacked their possessions, prevented them from removing their property, and videotaped the proceedings . . . d[id] not, as a matter of law, constitute sufficient grounds for intentional infliction of emotional distress"); *Kaye v. Trump,* 873 N.Y.S.2d 5, 6 (1st Dep't 2009) (holding that commencing two baseless lawsuits and attempting to instigate an arrest were insufficiently extreme and outrageous to give rise to an intentional infliction of emotional distress claim).

Nor do Plaintiff's claims that Defendants ignored her requests "for reasonable accommodations in how mold, painting, floor and other repairs [were] effectuated," refused to sign renewal leases for 2018 and 2019, and refused to give Plaintiff a DRIE (ECF 95, AC ¶¶ 13-15, 24, 26, 29) meet the standard. *See, e.g.*, *Graupner v. Roth*, 293 A.D.2d 408, 410 (1st Dep't 2002) ("The isolated landlord-tenant disputes . . . cited by plaintiff do not, even viewed cumulatively, amount to conduct even close to approaching the threshold of outrageousness needed to support a cause of action for intentional infliction of emotional distress.").

And vandalizing the door of her apartment, ringing her doorbell multiple times a day at all hours, and arranging for her to receive thousands of robocalls and spam emails (*See* ECF 95, AC ¶¶ 29, 32, 37-39, 53), while undoubtedly upsetting, are not so horrible "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto*, 164 F.3d at 827 (quoting *Howell*, 81 N.Y.2d at 122); *see also Seltzer v. Bayer*, 272 A.D.2d 263, 265 (1st Dep't 2000) (holding that claims that the defendant dumped "cement on the sidewalk in front of [the plaintiff's] house, tossed lighted cigarettes into his backyard, threw eggs on his front steps, and threatened once to paint a swastika on his house" were "three alleged incidents of littering and a particularly nasty remark," which, while "[n]oxious and deplorable," did not "rise to the level of outrageousness" required for the tort of infliction of emotional distress).

G.    Plaintiff's Claim for Invasion of Privacy Should Be Dismissed

Plaintiff alleges that Defendants invaded her privacy (*See* ECF 95, AC ¶ 82), presumably by intruding on her seclusion and her private enjoyment of her apartment. However, in New York State, the right to privacy is governed exclusively by Sections 50 and 51 of the Civil Rights Law, and there is no common law right to privacy. *See Howell,* 81 N.Y.2d at 123. Section 50 prohibits the use of a living person's name, portrait or picture for "advertising" or "trade" purposes without prior written consent, and Section 51 provides a private right of action for damages and injunctive relief. *See id.* While other states have recognized a cause of action for

44

unreasonable intrusion upon seclusion, New York State has not done so. *See id.* Accordingly,

Plaintiff's claim for invasion of privacy should be dismissed.

### III.    Leave To Amend

As a general matter, leave to amend should be "freely give[n] . . . when justice so

requires." Fed. R. Civ. P. 15(a)(2). Moreover, "a *pro se* litigant in particular should be afforded

every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima,* 228 F.3d at

81 (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed

without the Court granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated." *Chavis,* 618 F.3d at 170

(internal brackets and quotation marks omitted). As was the case when I granted Plaintiff's

request for ECF 95 to be considered the operative complaint, Plaintiff has "not yet had the

benefit of a decision of the Court explaining the pleading standards necessary for [her] claims to

survive a motion to dismiss." *Al-Haj,* 2021 WL 964211, at *5. (*See* ECF 162, Order.)

However, leave to amend should be denied where it would be "futile," and where the

"plaintiff cannot cure the deficiencies in his pleadings to allege facts sufficient to support his

claim." *Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019); *see also Cuoco v. Moritsugu*,

222 F.3d 99, 112 (2d Cir. 2000) (where the "problem with [a complaint] is substantive [and]

better pleading will not cure it," leave to amend should be denied as futile).

There is no indication that Plaintiff has any basis for her efforts to bring New Defendants

into the case: she has not alleged concrete facts showing that they are owners of her

apartment building or have anything to do with the owners of her apartment building other

than having used the same lawyers. Therefore, any effort to amend to plead claims against New Defendants would be futile. *See, e.g.*, *Cuoco,* 222 F.3d at 112.

Nor could Plaintiff avoid dismissal by reformulating the following claims: under the ADA, because the apartment building is not a public accommodation; under the Rehabilitation Act, because Plaintiff has not alleged and cannot allege that any Defendant received federal funding; under 42 U.S.C. § 1983, because no Defendant is a state actor; for fraud, because the behavior she complains of involves misrepresentations to other individuals about her and not misrepresentations to her; for intentional infliction of emotional distress, because the behavior she describes is not sufficiently egregious; for invasion of privacy, because New York State does not recognize this tort under the circumstances of this case; and under the FHA for failure to make reasonable accommodations, because that claim allows only injunctive relief, and Plaintiff no longer lives in the building. *See id*.

However, I recommend that Plaintiff should be permitted to replead the claims for FHA discrimination and retaliation against Defendant Ray Realty, because it is conceivable that she could be able to allege facts sufficient to support such claims. To state a claim for FHA discrimination, she would need to provide examples in her second amended complaint of similarly situated non-disabled individuals being treated differently from her or other indicia that Ray Realty acted with discriminatory animus when it engaged in the alleged retaliatory behavior. Specifically, she would need to plead:

- that Ray Realty did not seek to evict, or make reports to agencies about, or refuse to renew the leases of non-disabled tenants, and/or that Ray Realty sought to evict, or

made reports to agencies about, or refused to renew the leases of other disabled tenants;

- the basis for her assertion that Ray Realty blocked her efforts to get a DRIE in 2018 and 2019 and that its motivation was discriminatory animus due to her disability; and

- the basis for her conclusion that Ray Realty was acting in concert with the housing court judge who issued an APS order; and was responsible for vandalizing the door of her apartment, for planting garbage outside her door, for arranging for people to ring her doorbell, and for causing her to receive robocalls and spam emails; and that its motivation was discriminatory animus due to her disability.

To state a claim for FHA retaliation, Plaintiff would need to allege facts explaining the basis for the conclusion that the reason for adverse actions by Ray Realty was her disability-related protected activity; that Ray Realty acted with a discriminatory motive; and that as a result she was chilled in the exercise of her rights under the FHA. Specifically, Plaintiff would need to allege facts showing:

- that Ray Realty did not seek to evict, or make reports to agencies about, or refuse to renew the leases of tenants who did not engage in disability-related protected activity, and/or that Ray Realty sought to evict, or made reports to agencies about, or refused to renew the leases of other tenants who engaged in disability-related protected activity;

47

- the basis for her assertion that Ray Realty blocked her efforts to get a DRIE in 2018 and 2019 and that its motivation was to retaliate against her for her disability-related protected activity; and

- the basis for her conclusion that Ray Realty was acting in concert with the housing court judge who issued an APS order; and was responsible for vandalizing the door of her apartment, for planting garbage outside her door, for arranging for people to ring her doorbell, and for causing her to receive robocalls and spam emails; that its motivation was to retaliate against her for disability-related protected activity; and that these events chilled her in her exercise of rights under the FHA.

I also believe that Plaintiff should be given an opportunity to replead her FHA discrimination and retaliation claims against Defendants Zavisa Zecevic, Militec, Julia Zecevic, and Dejan Zecevic. The FHA allows for individual liability, *Andujar v. Hewitt*, No. 02-CV-2223 (SAS), 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002). The AC includes allegations supporting a conclusion that two of these individual Defendants may have had some relationship with Ray Realty: the AC states that Zavisa Zecevic is listed as the sole owner of the building and includes exhibits suggesting Zavisa Zecevic has an ownership interest in the building; exhibits to the AC also suggest that Militec has some role at the building. (*See, e.g.*, ECF 95, AC ¶ 52; ECF 95-2, AC Ex. A at 24.) While the AC does not contain allegations about Julia and Dejan Zecevic, those individuals who share a last name with Zavisa Zecevic and therefore may be relatives of Zavisa Zecevic, and so it is possible that they too were involved with the building. It is conceivable that Plaintiff could state FHA discrimination and retaliation claims against Defendants Zavisa

48

Zecevic, Militec, Julia Zecevic, and Dejan Zecevic if allowed to replead. I therefore recommend dismissing the FHA discrimination and retaliation claims against these individual Defendants without prejudice to Plaintiff's filing a second amended complaint advancing such claims. *See Chavis,* 618 F.3d at 170 ("A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal brackets and quotation marks omitted).

To adequately state a claim for FHA discrimination and retaliation against these individual Defendants, Plaintiff would have to include in her second amended complaint concrete facts showing precisely how these individuals were involved in the alleged discriminatory and retaliatory behavior described above.

If Your Honor adopts this Report and Recommendation, Plaintiff should be given thirty days to file her second amended complaint repleading her FHA discrimination and retaliation claims against Defendants Ray Realty, Zavisa Zecevic, Militec, Julia Zecevic, and Dejan Zevecic; and Plaintiff should be reminded that the second amended complaint will replace and not supplement the AC.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss be GRANTED, as follows:

Claims against Defendants Daejan NY Ltd., Gregor, RRM Realty, TRUE Coffee, TRCU Coffee, 384 Court, Thomas Cummings, Morten Teljum, Labe Twerski, Sam Becker, Adi Nahmani,

1651 Coney Island Avenue 4 11230, 41-25 44th Street Owners Corp., 41-25 44th Street Apt. A7

Queens, and 34 John and Jane Does should be dismissed with prejudice;

Claims under the ADA and the Rehabilitation Act should be dismissed with prejudice;

Claims under 42 U.S.C. § 1983 should be dismissed with prejudice;

Claims for fraud, intentional infliction of emotional distress, and invasion of privacy

should be dismissed with prejudice;

Claims under the FHA against Defendant Ray Realty for failure to make reasonable

accommodations by performing repairs in the manner requested by Plaintiff should be

dismissed with prejudice;

Claims under the FHA against Defendants Zavisa Zecevic, John Militec, Julia Zecevic,

Dejan Zecevic for failure to make reasonable accommodations by performing repairs in the

manner requested by Plaintiff should be dismissed with prejudice; and

Claims under the FHA for discrimination and retaliation against Defendants Ray Realty

and Defendants Zavisa Zecevic, John Militec, Julia Zecevic, Dejan Zecevic should be dismissed

without prejudice.

Dated:      New York, New York
            July 22, 2024

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).